W. S. Smith *against* W. Smith, jun. and others.

If a guardian, or other *trustee*, lends the money of the *cestui que trust*, without due security, he will be responsible, in case the borrower becomes insolvent.

What is due security for monies loaned by a trustee, appears to be a point not fully settled and established. *It seems*, in general, that *personal* security is not sufficient to shield the testator from responsibility, in case of loss.

Where a guardian took promissory notes of persons solvent, at the time, and who continued to be solvent to the time of taking the account before the master, under a decretal order of the Court, on a bill filed for an account, and which notes were allowed and credited the guardian in the account, and were ready to be delivered by him, the Court confirmed the report of the master ; the notes being for small sums, for rents, &c. and the credit and course of business according to the practice of the testator in his lifetime.

A guardian, or trustee, is not held to account for any neglect or breach of duty not charged in the bill.

THE bill stated, that *W. S.* the father of the plaintiff, by his will, dated *October* 18th, 1801, devised his personal estate, after payment of his debts, to the plaintiff, and his brother *A. S.*, equally ; and one part of his real estate to the plaintiff, and the other to his brother *A. S.* describing them particularly, and the survivor was to take the whole, if the other died under age. *J. Smith,* and the defendant *W. S.,* were appointed executors, who qualified, and possessed themselves of the personal estate. *A. S.* died an infant, and intestate, and the plaintiff became his administrator. On the 27th of *October,* 1804, the defendant *W. S.* and *M. S. Woodhull,* since deceased, were appointed guardians of the personal estate of the plaintiff and his brother, and entered into possession of the rents and profits of the real estate.

*Jan.* 8th, 1820.

Vol. IV.                   36

+ *Trustee*

*M. S. Woodhull* died the 8th of *November*, 1815, and made the other two defendants, *T. S. Strong* and *Mary Woodhull*, his executors, who qualified, &c. That after the death of *M. S. Woodhull*, the rents and profits of the real estate of the plaintiff and *A. S.* were received by the defendant *W. S.* The plaintiff came of age on the 8th of *July*, 1817, when *W. S.* surrendered up the possession of the real estate to him. That the defendant *W. S.* took possession, as guardian, of a dwelling house at *Long Swamp*, *Suffolk* county, belonging to the plaintiff, of the yearly value of 250 dollars, under pretence that he would occupy it as tenant, at a reasonable rent; and while he so occupied it, committed *waste*, &c. *Prayer*, that the defendants may account, and pay the balance due to the plaintiff, and surrender up all mortgages, and other real securities, for money lent for account of the plaintiff, or his brother *A. S.* and to make satisfaction for the waste, &c.

The defendants having answered, the cause was brought to a hearing, and a decretal order entered the 7th of *October*, 1818, by which it was referred to a master to state and take an account, touching the monies received by the defendant *W. S.*, and *M. S. Woodhull*, deceased; and an account of the rents and profits of the real estate of the plaintiff and his brother, from the time they were appointed guardians, until the death of *M. S. W.*; and touching the monies received by the defendant *W. S.*, for and on account of the said rents, issues, and profits, since the death of *M. S. W.*, to the filing of the bill; and touching the monies paid by the two guardians, or either of them, or expenses incurred or charges made, or either of them, in the support and education of the plaintiff and *A. S.*, and in and about the said real estate. That the master report the balance due from either party on such accounting. That he report the fair annual value of the *Long Swamp* farm, during the period it was occupied by the defendant *Smith*, and that he also ascertain and report whether the defendant *Smith* committed

+ by them

waste while he occupied the same, and the amount thereof, if any.

The master reported specially; and a balance of 861 dollars and 3 cents due from the defendants to the plaintiff.

Several exceptions were taken to the report by the plaintiff; the *first* and *third* of which, with the opinion of his honour the Chancellor upon them, are as follows:

*First exception.* Because, it appears that the master has charged the plaintiff, and credited the defendants, with the amount of sundry notes and obligations, some of which are said to have been taken by the defendant *Smith*, and *M. S. Woodhull*, deceased, or one of them, for arrears of rent due to the plaintiff or his brother *Apollos*, and others to have been taken for monies belonging to the plaintiff or his brother *Apollos*, and loaned out or placed at interest by them, or one of them; whereas the plaintiff ought not to be charged, nor the defendants credited, with the amount of the said notes, nor any of them.

THE CHANCELLOR. There is not a single bad note taken by the guardians. It appears from the testimony, that every person to whom they had loaned money was a safe and responsible person at the time of the loan, and remained so when the testimony was taken. It was the same case with the persons from whom notes were taken for arrearages of rent. The testator appears to have been in the habit of giving three months credit to the tenants for arrears of rent, and the guardians gave the same credit. Notes so taken were usually at six per cent, which appears to be the customary rate of interest in *Suffolk* county. In a case, like the present, where the sums were comparatively small, and the habit of dealing according to the practice which we have reason to presume was pursued by the testator, and especially where the debtors were originally sound, and continued so to the time of taking the account by the master, I am

induced to think we may, consistently with the policy and the doctrine of this Court, credit the guardian with the notes which he has ready to surrender. It would, under such circumstances, be unreasonable, and render the trust of a guardian an object of unnecessary hazard, distrust, and aversion, to charge him with the amount of the notes in cash, and throw the future trouble and risk of collection upon him. I am not aware that any cases carry the rule to this rigorous extent. But in adopting this course, I mean to be understood, that if a guardian or other trustee loans money without due security, he must be responsible in case of insolvency. This is the settled *English* rule, and it ought to be followed. If any well grounded distrust had even been excited by the testimony, as to the safety of the debts, or any of them, I should have held the guardian responsible, and made him take such notes to himself.

What is due security for moneys loaned by a trustee, is a question I am not now called to discuss. The *English* rules are exceedingly strict on the subject of trusts, and especially of infants' moneys. An executor must not even rest on personal security; and if he does, it is at his own hazard. (*Terry* v. *Terry, Prec. in Ch.* 273. *Wilkes* v. *Steward, Cooper's Eq. Rep.* 6.) Lord *Kenyon* said, in *Holmes* v. *Dring,* (2 *Cox's Cases,* 1.) that it was never heard of that a trustee could lend an infant's money on private security. If he does, and takes a bond, with personal security, he must be responsible, if the obligors become insolvent, though they were in very ample circumstances at the time the money was lent. I have no doubt that it is a wise and excellent general rule, that a trustee loaning money, must require adequate real security, or resort to the public funds. If he invest the trust moneys in the public funds, he is not liable to the fall of stocks; (3 *Bro.* 434.) and, probably, the depreciation of the real security would come within the reason of that rule. But personal security is always more or less precarious; particularly when the credit is

given for a considerable length of time, or when the borrower, or his surety, is engaged in mercantile, or other hazardous pursuits. Lord *Alvanley*, in *Powell* v. *Evans*, (5 *Ves.* 839.) held the executor responsible for a loss by insolvency, where he permitted, negligently, and without good reason, money to remain longer than was absolutely necessary, *upon personal security taken by the testator, in his lifetime*. This case is a strong illustration of the strictness of the doctrine upon which the general rule is founded. It is not, however, necessary for me to say, whether the rule declared by Lord *Kenyon*, is to be taken, at all times, and under all circumstances, in so absolute and unqualified an extent. Possibly, there may be cases in which the taking of personal security would exonerate the trustee, if that security was selected with discretion, and according to the practice of the testator, in like cases. The former cases were more indulgent than the latter ones. The observations of Lord Ch. *Harcourt*, in 1 *P. Wms.* 241, and of Lord *Northington*, in *Harden* v. *Parsons*, (1 *Eden.* 145.) seem to admit of more latitude than the doctrine in *Holmes* v. *Dring*. I am not, however, prepared to say whether any, and if any, what exceptions, may exist to the general rule on this point. I have not formed any absolute opinion on the subject, and must leave it to be discussed and considered when it shall arise.

The first exception is, consequently, overruled.

[The answer to the second exception was contained in the master's supplementary report, under the order of the 13th of *September* last, and the explanation is entirely satisfactory. To allow the exception, would be charging the defendants twice for the same thing.]

*Third Exception.* That the master has omitted to charge the defendants, and to credit the plaintiff, with the rents

1820.

SMITH
v.
SMITH.

which accrued and became due on the 1st of *March*, 1804, whereas the defendants ought to have been charged with 275 dollars, for the rents which accrued and became due on that day.

THE CHANCELLOR. It appears, from the supplementary report, that the rents for the year 1803, were accounted for and settled with *John Smith*, as acting executor of *William Smith*, deceased, previous to the 27th of *October*, 1804, on which day, as appears by the bill, the guardians were appointed.

The only complaint, then, against the guardians is, that they did not collect this money of the executor, who duly received it. But there is no such neglect charged in the bill, and they are not to be answerable for breaches of duty not alleged in the bill. If it had been made a substantial allegation, they might, perhaps, have met and answered it fully, and excused themselves completely from the charge of that neglect or default. They are charged with specific breaches of duty, and are called to account generally for the assets received, and they are not bound to answer beyond the allegations in the bill.

Exceptions overruled.