# RUTLAND COUNTY,

## JANUARY TERM, 1882.

[CONTINUED FROM PAGE 326, *ante*.]

---

FAYETTE BARNEY *v.* A. F. PARSONS' GUARDIAN.

*Guardian. Power to Loan Ward's Funds on Personal Security. Costs.*

1. A guardian, if he acts with due care, prudence, diligence, and good faith in loaning the funds of his ward, is not liable for a loss caused by the bankruptcy of his borrower, although he takes only his note, without other security; and this is so, although he loans money of his own to the same party, and receives but one note running to himself, not as guardian, as evidence of both debts.
2. The duties and liabilities of guardians discussed.
3. Distinction between *permanent* loans for income, and *temporary* loans of current funds in small sums.
4. The guardian is allowed his expenses of appeal.

APPEAL from Probate Court. Heard on the report of a referee, September Term, 1881, VEAZEY, J., presiding. The court adjudged $195.05, the larger sum named in the report, to be due the ward. The case appears in the opinion.

*John Howe* and *P. R. Kendall*, for the plaintiff.

We submit that there is no rule of law which makes it negligence *per se* for a trustee to make a temporary loan, of a small amount of money, like this, upon personal security. Such a rule would compel trustees to keep small amounts of money on hand. Trustees are held to a stricter rule in relation to capital sums than in relation to current income from interest, dividends, rents and other smaller sums. Perry Trusts, 565, 560; *Barney v. Saunders,* 16 Howard, 545; *Smith v. Smith,* 4 Johns. Ch. 283; Williams Ex. 1992.

Barney v. Parsons.

With respect to a small sum of money like this it has been held not improper for the trustee to put some of his own money with it, and loan it altogether on mortgage, as otherwise he might not be able to loan it at all. Perry Trusts, 561, 404, 490 ; *Graves' Appeal*, 50 Penn. 189. See 5 Paige, 187 ; 10 Penn. 285 ; 8 Barb. 53. The plaintiff should be allowed his expenses in procuring his account to be allowed. 53 Vt. 360.

*W. C. Dunton* and *Edward Dana*, for the defendant.

A trustee cannot invest moneys in personal securities. 1 Perry Trusts, s. 453 ; *Smith* v. *Smith*, 4 Johns. Ch. 281 ; *King* v. *Talbot*, 40 N. Y. 76 ; 4 Allen, 426 ; *Clark* v. *Garfield*, 8 Allen, 427 ; 12 Allen, 138 ; Schouler Dom. Rel. 477 ; 5 Ves. 798, 839.

The plaintiff should not have taken the note to himself alone. 11 Bab. 353 ; 11 Ves. 378 ; 1 Perry Trusts, ss. 406, 444 ; 102 Mass. 174.

The plaintiff should have kept the trust moneys separate and distinct from all others. By mingling this money with his own, he converted it to his own use, and is liable for the loss. 1 Perry Trusts, ss. 447, 463 ; *Farwell* v. *Steen*, 46 Vt. 678 ; *Bank* v. *Bank*, 2 Wall. 252 ; 2 Story Eq. ss. 1270, 1274 ; 17 N. H. 458.

The opinion of the court was delivered by

REDFIELD, J. The plaintiff, as guardian of defendant's ward, loaned, of his ward's money, $142.96, to one Adams. After two years, he loaned some of his own money to said Adams, and included in the note, payable to himself, the amount due from Adams to his ward ; Adams became bankrupt, and the money was lost.

The referee reports that : " I am unable to find that Barney was *negligent*, or wanting in *care*, in taking said note of said Adams ; and there was no testimony before me but that of the plaintiff." The finding of the referee, though negative in form, is equivalent, under the circumstances detailed, to *the positive state*ment that the plaintiff managed the property of his ward honestly, and with due *care* and *fidelity*.

The defendant offered no proof that the plaintiff was wanting

Barney v. Parsons.

in care, diligence, or discretion. But it is claimed that the fact that the plaintiff mingled the ward's money with his own, and took the note of Adams, payable to himself, without surety, is negligence *per se.* The familiar declaration of Lord KENYON is referred to, " that no rule was better established than that a trustee could not lend on mere personal security ; and it *ought to be rung in the ears* of every one who acts in the character of a trustee " ; and cases are quoted from the English reports affirming the same general doctrine.

We feel no inclination to abate, in the least, from the strict and rigid requirements of the *fiduciary*, in regard to his *cestui que trust ;* or impair in any degree the protection which the law throws about him. But in this country the *titles* to real estate, especially in new settlements, are uncertain, and unstable; and desirable mortgages cannot always be attained ; we had no public stocks, in which the faith of the government was pledged, until the late war, and they now bear such premiums, and many of them liable to be called in, and replaced by those bearing less interest, that it is often impracticable, or undesirable to make investments in such property, so that the only practical rule is to require of a trustee good faith, diligence, and care. Our statute, substantially makes this requirement : " An executor or administrator shall not make profit by the increase, nor suffer loss by the decrease or destruction, without his fault, of any part of the personal estate." Sec. 2097, R. L. : " A guardian shall account for and dispose of the personal property of the ward, as executors and administrators account for and dispose of personal estate." Sec. 2454, R. L. Our population are mainly farmers, with small estates ; and when one dies, one of the same class, of good repute, is sought for to care for the property of his widow and children. They have not read Blackstone carefully, and are not familiar with Lord KENYON's equity judgments ; but they have sound judgment and discretion, and are familiar with honest fidelity, diligence and care.

There is also a distinction, well known in the text books and adjudged cases, between capital sums permanently *invested* for *income,* and *temporary* loans of current funds, in small sums on

40

Barney v. Parsons.

hand, which are not needed in the present, but may be required in the administration of the property, to pay taxes, or other contingent expenses.   If such small sums might safely be made to earn a few dollars for the ward, the guardian would be in the line of his duty to cause it to be done.   If the arbitrary rule was made. to control that, in no case could the trustee loan on *personal securities,* funds would be locked up that might safely be made to produce income to the widow and the ward.   And no arbitrary rule can be made a substitute for strict fidelity, sound discretion, diligence and care.   Williams Exrs., 1894–'5–'6 ;   Perry Trusts, 560–5 ; 16 How. 545.

II.   The fact that the guardian included a small note due the ward in the note of Adams, payable to himself, if that fact has occasioned no loss, would not of itself, render the plaintiff liable. The report does not show that the guardian omitted to keep a full record of the amount in said note that belonged to his ward.   Indeed the exact statement of the sum that belonged to the ward shows that the money of the ward was kept separate, but was included in the same securities, with the money of another.   The case does not indicate that there is claim of actual negligence or fault in the plaintiff; the defence introduced no evidence ; and it is stated in argument, that the plaintiff appealed by reason of the disallowance of some small charges for personal services ; and it seems that in the County Court there was no dispute in matters that concerned the appeal, but the plaintiff got cost in a matter not complained of in the Probate Court.   The plaintiff

" —— aimed at duck or plover,"

and failed, but being faithful, and without actual fault, in the management of his trust, we think, he should not be made liable by *construction.*

The judgment of the County Court is reversed, and the balance in the hands of the guardian is adjudged to be $52.09, and the notes in his hands as stated in the report.   To be certified to the Probate Court, with costs to the plaintiff, and his expenses of appeal, to be taxed by the clerk, on notice.