WILLIAM P. HUNT, appellant.

Suffolk. November 20, 1885. — May 7, 1886.

A certificate, issued by a national bank, stating that a person named has deposited in the bank a certain sum, payable to the order of himself on return of the certificate properly indorsed, and understood between the bank and the depositor not to be payable until a future day agreed upon, is not in violation of the U. S. Rev. Sts. § 5183, forbidding national banks to issue any other notes to circulate as money than such as are authorized by its provisions.

The purchase, by a trustee, with the trust funds, in good faith, of a certificate of deposit, payable at a future day, issued by a national bank, the stock of which was selling at par, and occasionally at a small premium, and which was issuing large numbers of such certificates to individuals, savings banks, and trust companies, is not such an imprudent investment of the trust funds as will make the trustee liable for a loss arising from the failure of the bank before the day stipulated for the payment of the certificate.

At the hearing of an appeal by a trustee from a decree of the Probate Court, disallowing an item in his account showing an investment of the trust funds in a certificate of deposit issued by a national bank, and payable at a future day, evidence is admissible that, at and about the time of such investment, the bank

# 516 MAY, 1886.

issued large numbers of such certificates to individuals, savings banks, and trust companies; and the evidence of bank examiners, that it is not usual for national banks to issue such certificates, is also admissible.

APPEAL, by the trustee under the will of Charles S. Lynch, from a decree of the Probate Court, disallowing two items in his account as such trustee; the first item being a loan of $1900 to the South Boston Iron Company, upon collateral security, and the second item being a loan of $2100 to the Pacific National Bank; and ordering the trustee to reinvest the sum of $4000, being the amount of said trust fund, in some safe and secure manner.

The case was referred to a master, who made the following report:

It was stated by the trustee, and I find, that, of the principal of said trust fund, the sum of $1900, mentioned in item 1, is available by him at once as cash in hand. I find that all of said trust fund, to wit, said $4000, was at one time lent by said trustee to the South Boston Iron Company, secured by good collateral securities; that on September 14, 1881, he took a part of said trust money, or fund so invested, and purchased a certificate of deposit in the Pacific National Bank of Boston, a banking corporation organized under the laws of the United States and then doing business in Boston. Said certificate was signed by the cashier and countersigned by the teller, and was in the following form: "The Pacific National Bank of Boston, Mass. $2100. Boston, September 13, 1881. This certifies that William L. Lovell has deposited in this bank twenty-one hundred dollars, payable to the order of himself on return of this certificate properly indorsed."

On the back of the certificate was the following, signed by said Lovell: "On January 25, 1882, pay the within certificate to the order of William P. Hunt;" and the following signed by William P. Hunt: "Pay to order of William P. Hunt, trustee under the will of Charles S. Lynch, for the benefit of Miss Rebecca Lynch."

At the time of the purchase, Lovell informed the trustee that there was an agreement or understanding between him and the bank, made at the time when he obtained said certificate of deposit, that the money which it represented should not be called

for until January 25, 1882, which I find was the fact. Said trustee purchased it for less than $2100, by a sum equal to the interest at the rate of six per cent per annum on it from September 14, 1881, to January 25, 1882, which interest was $47.25 (the trustee paying to Lovell for said certificate $2052.75), and which interest the trustee has allowed to the *cestui que trust* in his accounts with her. These sums were paid by two checks. I find that, at the time of the purchase of said certificate of deposit, the bank had been regularly organized and was doing business as a national bank in Boston, the stock of which then sold at par; occasionally, about that time, at a small premium. Said bank failed on November 18, 1881, and subsequently a receiver was appointed to wind up its affairs. To the present time, the receiver has paid to the trustee dividends amounting to ten per cent on the amount of said certificate. This certificate has been allowed by the receiver of the bank as a valid claim against it for the amount of the certificate, but it is not probable that more than twenty-five per cent of said claim will be realized. If the question of good faith or bad faith of the trustee in the purchase of said certificate is one which I should find under said order to me, I find that the trustee purchased said certificate in good faith, and he offered evidence, against the objection of the *cestui que trust*, to show, and, if it is competent for him to show it, I find, upon such evidence offered and objected to, that the bank issued to various persons and parties, including savings banks and trust companies, in the last three months of 1880, nearly two hundred certificates of deposit, and in the year 1881, up to the time of its failure, about nine hundred certificates; some of them were drawn payable on their face at some future time, and as to others there was an agreement that the bank should not be called on to pay them until some future time. All this evidence of the issue of such certificates so objected to, and said finding upon it, are to be struck out if the court adjudges it incompetent.

The *cestui que trust* did not know of the investment of any of the trust fund in said certificate until after the failure of the bank, and she never assented to it. The trustee, who was, in September, 1881, president of the Atlas National Bank in Boston, on cross-examination said that he knew of but one instance of the

issuing of a certificate of deposit by a national bank payable on time, and, in that instance, the certificate was payable on two weeks' time; and he also said that he did not know whether he knew of this instance at the time of his purchase of said certificate in September, 1881.

At the hearing before me, the *cestui que trust* offered evidence, against the objection of the trustee, to show, by the testimony of C. O. Billings, formerly national bank examiner, appointed under the laws of the United States, and now president of the Globe National Bank in Boston, and J. W. McGruder, now such bank examiner in Boston, that it was not and is not usual or custom-ary for national banks to issue certificates of deposit payable at a future time, stated either on the face of the certificate or by an agreement with the payee. And, if it is competent to show the facts offered to be shown by this testimony, (to all of which facts the trustee objected as incompetent,) then I find the facts to be as above stated by said Billings and McGruder; and, if not competent, then the evidence, testimony, and finding of this fact are to be struck out.

The case was heard by *Devens*, J., and reserved for the consideration of the full court.

*A. Russ*, for the appellant.

*C. T. Gallagher, contra.*

C. ALLEN, J. In *Harvard College* v. *Amory*, 9 Pick. 446, 461, it was declared: " All that can be required of a trustee to invest is, that he shall conduct himself faithfully, and exercise a sound discretion. He is to observe how men of prudence, discretion, and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested." In that case, investments in stocks of an incorporated manufacturing company and of an incorporated insurance company were held to have been within the authority of the trustees. This general statement of the rule has been adhered to ever since. *Lovell* v. *Minot*, 20 Pick. 116. *Kinmonth* v. *Brigham*, 5 Allen, 270. *Clark* v. *Garfield*, 8 Allen, 427. *Brown* v. *French*, 125 Mass. 410. *Bowker* v. *Pierce*, 130 Mass. 262. In the present case, the will under which the trustee was appointed is not before us, and his

authority in respect to the investment in controversy is to be determined on general principles.

1. The fact that the certificate of deposit was indorsed by Lovell to Hunt, and by Hunt to himself as trustee, does not of itself show that the latter indorsement represented a transaction by which Hunt individually transferred the certificate to himself as trustee. The fact as found is the other way. The transfer to him personally appears to have been a mere form. The purchase was by Hunt as trustee, and the payment was from the trust funds.

2. The certificate of deposit was not illegal, as being in violation of the U. S. Rev. Sts. § 5183, which forbids national banks ·to issue any other notes to circulate as money than such as are authorized by the provisions of the statute. In *Shute* v. *Pacific Bank*, 136 Mass. 487, it was held that a certificate of deposit, in the same form as that now before us, was not to be deemed a promissory note, within the meaning of the Gen. Sts. c. 53, § 10, which provide that, in any action by an indorsee against the promisor upon a promissory note payable on demand, any matter shall be deemed a legal defence which would be a defence to a suit thereupon if brought by the promisee; so that the bank was held not to be entitled to defend an action brought by the indorsee, to recover the amount of the certificate, by setting off a debt due to the bank from the original depositor. It was recognized in that case that such certificates have in most respects the incidents of promissory notes, and are classed as such ; but certain distinctions were pointed out between them and common promissory notes such as were contemplated by the statute. If the United States Revised Statutes forbade the issue of any other notes whatever than such as were therein authorized, it would be difficult to hold this certificate to be legal. *Miller* v. *Austen*, 13 How. 218. But assuming that it might fall within the general designation of a note, it cannot be considered as a note intended to circulate as money, within the meaning of the statute. It requires to be indorsed. It was understood not to be payable till a certain future date. It is not in a sum adapted for general circulation as money. The form of the instrument, and the incidents above mentioned, show that it was not intended to circulate as money between individuals, and between government

and individuals, for the ordinary purposes of society.  *Craig* v. *Missouri*, 4 Pet. 410, 432.  *Briscoe* v. *Kentucky Bank*, 11 Pet. 257, 314, 318.  *Virginia Coupon cases*, 114 U. S. 269, 284.  See also *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 648, where it was held that certified checks do not fall within a similar prohibition.

3.  But it is urged that the issue of such certificates of deposit is not good banking, and is of itself so calculated to put a prudent investor on his guard that a trustee ought to be held responsible for any loss arising from such an investment.  In respect to this objection, it is to be observed, in the first place, that this method of doing business is not illegal or novel.  If Congress had intended to prohibit the issue of certificates of deposit altogether, or of certificates payable on time or with interest, it would probably have said so in plain terms.  The statute was passed in view of known methods of doing business.  It has long been understood that the relation between a bank and its depositor is that of debtor and creditor.  In England, the business of banking has been carried on to a greater extent by individuals than by incorporated companies; but the ordinary relation with depositors is the same.  *Carr* v. *Security Bank*, 107 Mass. 45.  It is competent for the parties to make such contract as they please respecting interest, and the time of payment of the principal.  To borrow at a low rate of interest and to lend at a higher rate is not an uncommon, though not a universally approved, method of banking.  Whether it is good or bad policy for a national bank to do this, is not a matter for judicial determination.  In *Foley* v. *Hill*, 2 H. L. Cas. 28, it was finally determined authoritatively for England, in 1848, that the relation between a banker and his customer is the ordinary relation of debtor and creditor, with a superadded obligation, arising out of the custom of bankers, to honor the customer's drafts; and that this relation was not altered by an agreement by the banker to allow interest on the balances in the bank.  Lord Chancellor Cottenham said: "The money paid into the banker's is money known by the principal to be placed there for the purpose of being under the control of the banker; it is then the banker's money; he is known to deal with it as his own; he makes what profit of it he can, which profit he retains to himself, paying back only the principal, according to the custom of bankers in some

places, or the principal and a small rate of interest, according to the custom of bankers in other places." p. 36. And Lord Brougham said: " The party who receives the money has the use of it as his own, and in the using of which his trade consists, and but for which no banker could exist, especially a banker who pays interest." p. 43. Adjudicated cases show that certificates of deposit bearing interest, or payable at a future date, have often been before the courts, and, in the absence of statutory prohibition, they have not been deemed open to legal objection on this ground. *Miller* v. *Austen, ubi supra.* *Kilgore* v. *Bulkley,* 14 Conn. 362. *Patterson* v. *Poindexter,* 6 Watts & S. 227. *London Savings Fund Society* v. *Hagerstown Savings Bank,* 36 Penn. St. 498. *Cate* v. *Patterson,* 25 Mich. 191. *Laughlin* v. *Marshall,* 19 Ill. 390. *Howe* v. *Hartness,* 11 Ohio St. 449. See also 2 Dan. Negot. Instr. §§ 1698–1707 *a*; Story Prom. Notes, § 12, *n.*; Morse on Banking, 64.

It is undoubtedly true that a bank incorporated under the authority of this Commonwealth could not lawfully issue such certificates, by reason of express statutory prohibition. Pub. Sts. *c.* 118, § 40. Gen. Sts. *c.* 57, § 63. Rev. Sts. *c.* 36, § 57. Sts. 1834, *c.* 203, § 1; 1828, *c.* 97, § 2. This prohibition, however, is subject to exceptions, in favor of the Commonwealth, of savings banks, of assignees in insolvency, of counties, cities, and towns, and of other banks. To all of these, state banks may pay interest; to some of them, they may issue notes payable at a future day certain. These exceptions are sufficient to show that the insecurity of the deposits or loans was not the evil specially feared by the Legislature. By the Pub. Sts. *c.* 157, § 53, moneys belonging to insolvent estates must be deposited by the assignee in some bank. The treasurer of the Commonwealth may deposit public moneys in national banks on interest. Pub. Sts. *c.* 16, § 55. County treasurers must deposit surplus funds in their hands in national banks, at such rates of interest as may be practicable. Pub. Sts. *c.* 23, § 18. The Rev. Sts. *c.* 36, § 78, authorized savings banks to lend their deposits on interest to banks, without any expressed limit as to amount of loan or time of payment. Such limitations, however, have since been enacted, in various statutes, and now savings banks may deposit sums not to exceed twenty per cent of the amount of their

deposits, on call, in national banks, and may receive interest for the same. See Gen. Sts. *c.* 57, § 144; Sts. 1863, *c.* 175, § 3; 1876, *c.* 203, § 9; 1881, *c.* 214, § 3; Pub. Sts. *c.* 116, § 20. Since savings banks might heretofore, and may still, invest their funds, to a limited amount, in the shares of such banks, (Rev. Sts. *c.* 36, § 78; Gen. Sts. *c.* 57, § 142; Pub. Sts. *c.* 116, § 20; St. 1882, *c.* 224,) the provision that deposits may be made on call does not imply that a loan of a moderate amount to a national bank for a short term is supposed to be insecure. A legal debt from a bank, due on demand, or within a short time, may properly be considered as a security of a higher order than shares in its capital stock. There is nothing in all this legislation which calls upon us peremptorily to hold a trustee responsible for a loss incurred by reason of purchasing a certificate of deposit in a national bank, payable at a future time certain; but every such case, as it arises, must be determined on its own circumstances.

In the present case, it was found as a fact, on the testimony of two witnesses, confirmed by that of the trustee himself, that it was not and is not usual or customary for national banks to issue certificates of deposit payable at a future time, stated either on the face of the certificate or by an agreement with the payee. But during nearly a year prior to the issue of the certificate in question, this particular bank had issued many such certificates. It was a legal form of obligation. It does not appear that this practice was objected to, and, indeed, it does not appear, except by inference from the statutory requirements, that it was known by the comptroller of the currency or the national bank examiner. These certificates were taken to a considerable extent by certain savings banks and trust companies. Whether these institutions were authorized by law to make such investments, we need not further consider. There is nothing to show that the bank was then in doubtful credit, or that any suspicion of its insolvency was entertained in the community. It is expressly found, and this finding is not open now to revision as the case is presented to us, that the trustee purchased the certificate in good faith. The purchase was at a rate of interest not shown to be excessive. The amount of the capital stock of the bank is not stated; it appears that it was a national bank, organized

under the laws of the United States, and doing business in Boston. It was subject to the supervision of the government officers, and to the various regulations provided in the statutes for such institutions. Its stock then sold at par in the market; and occasionally, about that time, at a small premium.

It has always hitherto been considered in Massachusetts that investments of trust funds might properly be made in the shares of banks incorporated under the authority of the Commonwealth, or of the United States. Looking, as we must, simply at the circumstances of the case which is submitted to us, a majority of the court do not think the trustee ought to be held responsible for the loss on the purchase of the certificate.

4. The various matters of evidence which were objected to were competent.                *Decree accordingly.*