CAYUGA COUNTY.—HON. J. B. TELLER, SURROGATE.—
January, 1889.

MATTER OF MAXWELL.

*In the matter of the judicial settlement of the account
of* JAMES KERR *as trustee of the will of* JOHN
MAXWELL, *deceased.*

A testator by his will directed the executor and trustee to invest his personal property in good interest-bearing securities. The trustee permitted a large part of the assets of the estate to remain on deposit at interest in a bank, after trying unsuccessfully to invest the same on bond and mortgage. The money was allowed to remain on deposit with the assent of the parties in interest, so far as the same could be given. The bank was apparently, and it was believed to be by the trustees, solvent. The trustee of the estate was also one of the directors of the bank but it did not appear that he had any reason to believe the bank otherwise than solvent. He kept his firm account also in that bank and business men of good repute, directors of the bank, had large sums of money on deposit therein and believed it to be solvent. The bank failed, and it was sought to hold the trustee responsible for the amount of the funds of the estate on deposit in the bank. It did not appear what was the cause of the failure, or the condition of the bank prior thereto, except that the cashier absconded at the end of the day before the failure. *Held,* that the trustee could not be charged with the loss arising from the failure of the bank.

ACCOUNTING of James Kerr, executor and trustee of the will of James Maxwell, deceased.

The facts appear in the opinion of the Surrogate.

A. H. SEARING, *for the petitioner.*

H. V. HOWLAND, *for executor and trustee.*

C. M. BAKER, *special guardian.*

THE SURROGATE.—This is a proceeding for the revocation of letters testamentary, and the judicial

settlement of the account of James Kerr, as testamentary trustee.    The will of John Maxwell was admitted to probate in September, 1882.    It contains the following provisions: "I give, devise, and bequeath, unto my executor hereinafter named; the use of all my real estate, and the use of all. my personal property, (except household furniture), for and during the term of the natural life of my wife, Mary Maxwell, in trust nevertheless to rent from time to time so much of the real estate as may not be required by my said wife for her use, and to sell and convert the personal property which is not invested in securities, and to invest the proceeds of the same in some good interest-bearing securities, and to pay the rent derived from said real estate and the interest derived from the investments of said personal property to my wife for the term of her natural life; and in case the income derived from the rents and from the investments of said personal property shall not be sufficient to provide for my said wife in a suitable and proper manner, then my executor is authorized to apply so much of the principal of said investment of the personal property as may be necessary, in addition to said income from my real and personal estate, to provide for her in a suitable and proper manner."    At the decease of his wife the testator gives and devises all his real and personal property to his two daughters, and to his grandchildren, Mary E. and Catherine A. Maxwell, share and share alike; the survivor of the grandchildren at the death of his wife, if one should previously die without issue, to take the other's share. James Kerr was appointed executor and trustee.    The

petitioner is the testator's widow.  On the 31st day of July, 1884, the accounts of the executor and trustee were judicially settled in this court.  It was then found and adjudged that there was unexpended of the personal estate in the hands of the said trustee held by him for the purposes of the trust, the sum of $2,362.60, after payment of all debts and the expenses of the accounting.  Of this amount, $600 was invested in bond and mortgage; the balance was, at the time of the accounting, on deposit in the First National Bank of Auburn, to the credit of the executor, in an account by itself; $800, the proceeds of certain mortgages held by the executor, having been deposited in the spring of 1883, and the balance having been transferred from other banks, in October, 1882.  The $600 mortgage was paid to the executor and trustee in September, 1887, and the proceeds were thereupon deposited by him in the First National Bank of Auburn, and credited upon the same account, and in the same manner, as the other funds.  On the 21st day of January, 1888, the First National Bank suspended payment, and went into the hands of a receiver.  The executor and trustee was at the time of making the deposits, and at the time of the failure of the bank, a director thereof, and a part of the time was a member of the committee of the board appointed to examine its affairs.  He was a borrower from the bank, both individually and as a member of a business firm.  The individual indebtedness to the amount of $1,300 is still unpaid.  It is alleged and admitted that the executor is insolvent.  The deposits of the firm were made in this bank to nearly the time

of its failure; but at the time of the failure this account was overdrawn to a small amount, which has since been paid. The evidence shows that the executor believed the bank to be perfectly solvent. The last examination by the committee was made in October, 1887. The executor was then ill, and unable to take part. The examinations made by the committee consisted in looking over the books of the bank, to see whether the notes and the bills receivable corresponded with the statement of the cashier, and to ascertain whether the amount of cash on hand was correctly stated; and at the end of every year an examination was made of the securities. The reason given by the executor for changing the deposits of money from other banks to this one is that it paid 4 per cent on deposits, while the others paid only 3 per cent. It appears that the change was made with the consent of the petitioner, who was entitled to the income of the property, and who has had the interest upon the deposits; and that other parties in interest were consulted in regard to the deposits. The executor testifies that he endeavored to find an investment of this fund upon bond and mortgage, and consulted an attorney and others in regard to it, and did not find any, and that the savings banks were making loans at 5 per cent. The attorney also testifies that he endeavored to procure a mortgage for the executor, but was unable to do so. It appears that some of the leading business men of the city deposited money in this bank up to the time of the failure, and that other directors, who had the same opportunity to know the condition of the bank, had large deposits there at the

time of the failure, and believed the bank to be perfectly solvent. It is proven that the amount of the deposits in the bank, when it closed, was from six to eight hundred thousand dollars. A dividend of 25 per cent has been paid to creditors by the receiver. It does not appear what the cause of the failure was. The accountant employed by the receiver, and who has since succeeded him as receiver of the bank, testified in the proceeding that he had no knowledge from the books of the bank as to its solvency at any date prior to its closing, and that it would take from 10 to 20 days for anybody to arrive at any information. There is nothing to show whether the failure is due to the defalcation of any officer of the bank, or whether the books showed the real condition of the bank, or whether the assets were valueless to any considerable extent. It does appear that the cashier, in whom much confidence had been placed, absconded at the close of the last banking day before the bank discontinued business.

It is claimed on the part of the contestants that the executor and trustee, not having invested the trust funds in real estate securities, or government bonds, or deposited the same with trust companies approved by the court, and designated by them as proper depositories, is chargeable with the amount of the estate and interest. The principal authority cited to sustain this proposition is the case of King v. Talbot, 40 *N. Y.* 76. This case involved the question of the liability of a trustee who had invested funds held by him in canal, railroad, and bank stocks, in violation of the obligation of his trust. It was held that to place the

principal of a fund in a condition in which it is necessarily exposed to the hazard of loss or gain, according to the success or failure of the enterprise in which it is embarked, and in which by the very terms of the investment, the principal is not to be returned at all, was a violation of the trust, and that the *cestuis que trustent* were not obliged to accept the investments, and might call upon the executors to pay over the whole amount of their legacies, and interest thereupon. The court says: "The just and true rule is that the trustee is bound to employ such diligence and such prudence in the care and management as in general prudent men of discretion 'and intelligence in such matters employ in their own like affairs. This necessarily excludes all speculation,—all investments for an uncertain and doubtful rise in the market. . . . . "The preservation of the fund, and the procurement of a just income therefrom, are primary objects of the creation of the trust itself and are to be primarily regarded." The same principle was asserted in the case of Leitch v. Wells, 48 *N. Y.* 585. In Higgins v. Whitson, 20 *Barb.* 141, a trustee had loaned money upon a second mortgage security. The first mortgage was $4,000, and the real estate was worth $16,000. The trustee had consulted the *cestui que trust* in regard to the investment. The court says: "It cannot be expected from trustees that they are to act upon principles different from those which actuate cautious and prudent men in the transactions of their own affairs; otherwise, the office of trustee would be one of such hazardous responsibility that no prudent or competent man would ever accept it." It was said by

the court in Litchfield v. White, 7 *N. Y.* 443, speaking of the liability of an assignee under a voluntary assignment for the benefit of creditors: "Every trustee must be presumed by the court before whom his account is taken, to use in his own concerns such diligence as is commonly used by all prudent men. The diligence of a provident man, therefore, is the measure of a trustee's duty." The same rule is stated in Willis on Trustees, 125. It was said by Chancellor KENT, in the case of Smith v. Smith, 4 *Johns. Ch.* 284, after quoting the English authorities, holding that an executor must not rest on personal security : "Personal security is always more or less precarious ; particularly when the credit is given for a considerable length of time, or when the borrower, or his surety, is engaged in mercantile or other hazardous pursuits. . . . . . I have no doubt that it is a wise and excellent general rule that a trustee loaning money must require adequate real security, or resort to the public funds." In the case of Thompson v. Brown, *Id.* 628, the Chancellor quotes with approval the opinion of Lord HARDWICKE in Knight v. Lord Plymouth, 3 *Atk.* 480, in which it was held that a receiver, who had deposited money with a banker, of good credit, who afterwards failed, as the receiver was not chargeable with any wilful default or fraud, was not responsible for the loss. The views of the chancellor as to the exact rule to be adopted in fixing the responsibility of trustees are not very definitely expressed. In Massachusetts the courts require of a trustee only that he shall exercise such sound discretion as a prudent man would be expected to use in his individual investments, having regard to the

safety of the fund.   Investments in stock of insurance, banking and railroad corporations have been allowed. Bowker v. Pierce, 130 *Mass.* 262;  Brown v. French, 125 *Mass.* 410;  Harvard College v. Amory, 9 *Pick.* 446.   The same latitude is allowed by the courts of New Hampshire and Vermont.   French v. Currier, 47 *N. H.* 88 ;  Barney v. Parsons, 54 *Vt.* 623.   In many of the southern states the same rule is observed, and even legislative enactments have been adopted authorizing trustees to invest upon personal securities. The courts in Pennsylvania and New Jersey incline to look with disfavor upon investments in stock corporations, approving only real estate mortgages and government securities.   Halsted v. Meeker's Ex'rs, 18 *N. J. Eq.* 136 ;  Ihmsen's Appeal, 43 *Pa. St.* 431 ;  The Supreme Court of the United States, in the case of Lamar v. Micou, 112 *U. S.* 452, said :  " The general rule is everywhere recognized, that a guardian or trustee, when investing property in his hands, is bound to act honestly and faithfully, and to exercise a sound discretion, such as men of ordinary prudence and intelligence use in their own affairs."   In England it has been held by the Court of Chancery that a trustee who lends money upon personal promise of repayment, without security, does so at his own risk.   In regard to the liability of trustees for money deposited in a bank, it has been decided in England that personal representatives are not, in the absence of all want of due care and watchfulness, to be held responsible for the loss of money belonging to an estate which is deposited in a bank of good repute, and in the official name of such representatives.   Swinfen v.

Swinfen, 29 *Beav.* 211.   But an administrator will be
held liable, if he keeps money in a bank an unrea-
sonable length of time, or where it is his duty to in-
vest the fund in safe securities, Moyle v. Moyle, 2
*Russ. & M.* 710; Johnson v. Newton, 11 *Hare*, 169;
or to pay it over to newly appointed trustees, or to pay
it into court; or if, having no occasion to keep a bal-
ance on hand for the purposes of the trust, he lends
the money to the bank on interest upon personal se-
curity, not sanctioned by the court, Darke v. Martyn,
1 *Beav.* 525.   In the state of California it has been
held that a guardian is not responsible for the loss of
funds occurring by reason of his depositing them for
safe-keeping in a bank, except when it was known
that such bank was unsafe.   Minor's Estate, *Myr.
Cal. Prob.* 230.   The same case holds that if a guar-
dian loans trust funds imprudently and without security
he must make good the loss.   The Court of Appeals
of this state decided, in the case of People *ex rel.* Nash
v. Faulkner, 107 *N. Y.* 477, that a Surrogate, into
whose hands surplus money arising on foreclosure sale
of land belonging to an intestate's estate was paid, and
by whom it was deposited in good faith with a private
banker in good standing and credit, pending pro-
ceedings to determine the rights of claimants thereto,
was not liable for loss arising from the failure of the
banker; that he is only responsible for good faith and
reasonable diligence.   The court says: "The Surro-
gate was not a public officer appointed to receive or
disburse public money; . . . . . he was to hold the
same for distribution. . . . . There is nothing in the
statute which makes him an absolute debtor for it."

The court also says: "If he had been a trustee, and had deposited this money in good faith, without any negligence on his part, in this bank, its loss by the failure of the banker, would have been a good defence. . . . . . It is conceded that if the administrators had deposited the money of their estate in this bank in good faith, and without negligence, they would not have been responsible for its loss." 2 *Williams, Ex'rs* (*5th Amer. ed.*), 164; 3 *Redf. Wills*, 394.

From these authorities, observing particularly the expression of the courts of this state, the propositions are deducible that trustees who are directed to invest money upon interest-bearing securities should only accept real estate securities or government bonds; that they should be held personally liable for any loss which is incurred in the purchase of stock of corporations with trust funds, or from loans made without security; that they are bound to exercise that care in the management of trust property which prudent and intelligent men use in similar private matters; that moneys held by them uninvested may properly be deposited in a bank of good repute and credit; that such deposit should be in the name of the trustee, with his official title, and be kept separate from his private account; that the deposit should not be continued an unreasonable time, and should be subject to demand. The case at bar is difficult to determine on account of the relations of the executor to the bank in question, and the opportunities he had to examine the books, and the fact that the trust funds were kept so long a time in the bank. From the evidence, however, I am satisfied that the executor believed the

bank to be in sound condition, and the fact of his having been able to learn the contrary is left in much doubt. The evidence is undisputed to show that he endeavored to obtain proper investment, and that the deposit in the bank was with the assent of the parties in interest, so far as it could be given. It is therefore decided that the executor, as trustee, is not personally liable for the money deposited in the First National Bank, and his account will be settled accordingly. He will be discharged upon turning over to his successor or into court, his claim as trustee against the bank. The other questions raised in the accounting are not necessary to be mentioned here.

NOTE. *Deposit in Bank of Trust Funds.*

A trustee may deposit money belonging to a trust fund with a banking institution in good credit, and the deposit may be continued for so long a period as will enable the trustee by the use of ordinary diligence, to obtain a secure and proper investment, or as may be required by the exigencies of the estate. But where he fails by his negligence to make the investments within a reasonable time and allows the money still to remain on deposit and it is thereby lost, the law charges him with the loss. Matter of Knight (N. Y. Supreme Ct., Spec. Term), 21 Abb. N. C. 388.

And in such case the trustee will not be exonerated from liability under a clause in the testator's will declaring that the executors shall not be held responsible for unavoidable loss of property or money involved in the insolvency of a bank, for this is not an unavoidable loss. *Id.*

If a trustee deposits the trust funds in a private bank in which he is a partner, where the funds will draw interest, upon the request of one of the beneficiaries, and by the consent of the other, he shall not be liable for the loss merely because the bank afterwards failed, the investment being a safe one when made, and there being other evidence at the time that the money was safe. Mills v. Swearingen, 67 Tex. 269.

An investment of $2,000 trust funds in a certificate of deposit in a national bank, the stock of which is selling at par, is not such an investment as should in the absence of circumstances showing want of prudence make the trustee prepersonally chargeable with the loss of the deposit. Hunt's Appeal, 141 Mass. 515.

*Investment by Trustees.*

Upon the general subject of investments by trustees, see a very complete note in 40 American Decisions, 506, containing a large collection of cases.