### In re MAXWELL'S ESTATE.

(*Surrogate's Court, Cayuga County.* January 22, 1889.)

TRUSTS—DEPOSIT OF TRUST FUND IN BANK—LIABILITY OF TRUSTEE FOR LOSS.

    An executor was directed by the will to invest a trust fund in some good interest-bearing security. A portion of the fund was so invested, but the balance—the executor being unable to obtain a proper investment for it—was deposited in a bank, with the assent of the parties concerned, where it remained until the failure of the bank. The executor was a director of the bank, but believed it to be solvent, as did others of the directors and certain of its leading depositors. *Held*, that the executor was not personally liable for the loss caused by the failure of the bank.

*A. H. Searing*, for petitioner.     *H. V. Howland*, for executor and trustee. *C. M. Baker*, special guardian.

TELLER, S. This is a proceeding for the revocation of letters testamentary, and the judicial settlement of the account of James Kerr, as testamentary trustee. The will of John Maxwell was admitted to probate in September, 1882. It contains the following provisions: "I give, devise, and bequeath unto my executor hereinafter named the use of all my real estate, and the use of all of my personal property, (except household furniture,) for and during the term of the natural life of my wife, Mary Maxwell, in trust nevertheless to rent from time to time so much of the real estate as may not be required by my said wife for her use, and to sell and convert the personal property which is not invested in securities, and to invest the proceeds of the same in some good interest-bearing securities, and to pay the rent derived from said real estate and the interest derived from the investments of said personal property to my wife for the term of her natural life; and in case the income derived from the rents and from the investments of said personal property shall not be sufficient to provide for my said wife in a suitable and proper manner, then my executor is authorized to apply so much of the principal of said investment of the personal property as may be necessary, in addition to said income from my real and personal estate, to provide for her in a suitable and proper manner." At the decease of his wife the testator gives and devises all his real and personal property to his two daughters, and to his grandchildren, Mary E. and Catherine A. Maxwell, share and share alike; the survivor of the grandchildren at the death of his wife, if one should previously die without issue, to take the other's share. James Kerr was appointed executor and trustee. The petitioner is the testator's widow. On the 31st day of July, 1884, the accounts of the executor and trustee were judicially settled in this court. It was then found and adjudged that there was unexpended of the personal estate in the hands of the said trustee held by him for the purposes of the trust, the sum of $2,362.60, after payment of all debts and the expenses of the accounting. Of this amount $600 was invested in bond and mortgage; the balance was, at the time of the accounting, on deposit in the First National Bank of Auburn, to the credit of the executor, in an account by itself; $800, the proceeds of certain mortgages held by the executor, having been deposited in the spring of 1883, and the balance having been transferred from other banks, in October, 1882. The $600 mortgage was paid to the executor and trustee in September, 1887, and the proceeds were thereupon deposited by him in the First National Bank of Auburn, and credited upon the same account, and in the same manner, as the other funds. On the 21st day of January, 1888, the First National Bank suspended payment, and went into the hands of a receiver. The executor and trustee was at the time of making the deposits, and at the time of the failure of the bank, a director thereof, and a part of the

time was a member of the committee of the board appointed to examine its affairs. He was a borrower from the bank, both individually and as a member of a business firm. The individual indebtedness to the amount of $1,300 is still unpaid. It is alleged and admitted that the executor is insolvent. The deposits of the firm were made in this bank to nearly the time of its failure; but at the time of the failure this account was overdrawn to a small amount, which has since been paid. The evidence shows that the executor believed the bank to be perfectly solvent. The last examination by the committee was made in October, 1887. The executor was then ill, and unable to take part. The examinations made by the committee consisted in looking over the books of the bank, to see whether the notes and the bills receivable corresponded with the statement of the cashier, and to ascertain whether the amount of cash on hand was correctly stated; and at the end of every year an examination was made of the securities. The reason given by the executor for changing the deposits of money from other banks to this one is that it paid 4 per cent. on deposits, while the others paid only 3 per cent. It appears that the change was made with the consent of the petitioner, who was entitled to the income of the property, and who has had the interest upon the deposits; and that other parties in interest were consulted in regard to the deposits. The executor testifies that he endeavored to find an investment of this fund upon bond and mortgage, and consulted an attorney and others in regard to it, and did not find any, and that the savings banks were making loans at 5 per cent. The attorney also testifies that he endeavored to procure a mortgage for the executor, but was unable to do so. It appears that some of the leading business men of the city deposited money in this bank up to the time of the failure, and that other directors, who had the same opportunity to know the condition of the bank, had large deposits there at the time of the failure, and believed the bank to be perfectly solvent. It is proven that the amount of the deposits in the bank, when it closed, was from six to eight hundred thousand dollars. A dividend of 25 per cent. has been paid to creditors by the receiver. It does not appear what the cause of the failure was. The accountant employed by the receiver, and who has since succeeded him as receiver of the bank, testified in the proceeding that he had no knowledge from the books of the bank as to its solvency at any date prior to its closing, and that it would take from 10 to 20 days for anybody to arrive at any information. There is nothing to show whether the failure is due to the defalcation of any officer of the bank, or whether the books showed the real condition of the bank, or whether the assets were valueless to any considerable extent. It does appear that the cashier, in whom much confidence had been placed, absconded at the close of the last banking day before the bank discontinued business.

It is claimed on the part of the contestants that the executor and trustee, not having invested the trust funds in real estate securities or government bonds, or deposited the same with trust companies approved by the court, and designated by them as proper depositories, is chargeable with the amount of the estate and interest. The principal authority cited to sustain this proposition is the case of *King* v. *Talbot*, 40 N. Y. 76. This case involved the question of the liability of a trustee who had invested funds held by him in canal, railroad, and bank stocks, in violation of the obligation of his trust. It was held that to place the principal of a fund in a condition in which it is necessarily exposed to the hazard of loss or gain, according to the success or failure of the enterprise in which it is embarked, and in which by the very terms of the investment the principal is not to be returned at all, was a violation of the trust, and that the *cestuis que trustent* were not obliged to accept the investments, and might call upon the executors to pay over the whole amount of their legacies, and interest thereupon. The court says: "The just and true rule is that the trustee is bound to employ such diligence and such prudence in the care and management as in general prudent men of discretion

and intelligence in such matters employ in their own like affairs. This necessarily excludes all speculation,—all investments for an uncertain and doubtful rise in the market. * * * The preservation of the fund, and the procurement of a just income therefrom, are primary objects of the creation of the trust itself, and are to be primarily regarded." The same principle was asserted in the case of *Leitch* v. *Wells*, 48 N. Y. 585. In *Higgins* v. *Whitson*, 20 Barb. 141, a trustee had loaned money upon a second mortgage security. The first mortgage was $4,000, and the real estate was worth $16,-000. The trustee had consulted the *cestui que trust* in regard to the investment. The court says: "It cannot be expected from trustees that they are to act upon principles different from those which actuate cautious and prudent men in the transactions of their own affairs; otherwise, the office of trustee would be one of such hazardous responsibility that no prudent or competent man would ever accept it." It was said by the court in *Litchfield* v. *White*, 7 N. Y. 443, speaking of the liability of an assignee under a voluntary assignment for the benefit of creditors: "Every trustee must be presumed by the court before whom his account is taken, to use in his own concerns such diligence as is commonly used by all prudent men. The diligence of a provident man, therefore, is the measure of a trustee's duty." The same rule is stated in Willis, Trustees, 125. It was said by Chancellor KENT, in the case of *Smith* v. *Smith*, 4 Johns. Ch. 284, after quoting the English authorities, holding that an executor must not rest on personal security: "Personal security is always more or less precarious; particularly when the credit is given for a considerable length of time, or when the borrower, or his surety, is engaged in mercantile or other hazardous pursuits. * * * I have no doubt that it is a wise and excellent general rule that a trustee loaning money must require adequate real security, or resort to the public funds." In the case of *Thompson* v. *Brown*, Id. 628, the chancellor quotes with approval the opinion of Lord HARDWICKE in *Knight* v. *Lord Plimouth*, 3 Atk. 480, in which it was held that a receiver, who had deposited money with a banker of good credit, who afterwards failed, as the receiver was not chargeable with any willful default or fraud, was not responsible for the loss. The views of the chancellor as to the exact rule to be adopted in fixing the responsibility of trustees are not very definitely expressed. In Massachusetts the courts require of a trustee only that he shall exercise such sound discretion as a prudent man would be expected to use in his individual investments, having regard to the safety of the fund. Investments in stock of insurance, banking, and railroad corporations have been allowed. *Bowker* v. *Pierce*, 130 Mass. 262; *Brown* v. *French*, 125 Mass. 410; *Harvard College* v. *Amory*, 9 Pick. 446. The same latitute is allowed by the courts of New Hampshire and Vermont. *French* v. *Currier*, 47 N. H. 88; *Barney* v. *Parsons*, 54 Vt. 623. In many of the southern states the same rule is observed, and even legislative enactments have been adopted authorizing trustees to invest upon personal securities. The courts in Pennsylvania and New Jersey incline to look with disfavor upon investments in stock corporations, approving only real estate mortgages and government securities. *Halsted* v. *Meeker's Ex'rs*, 18 N. J. Eq 136; *Ihmsen's Appeal*, 43 Pa. St. 431. The supreme court of the United States, in the case of *Lamar* v. *Micou*, 112 U. S. 452, 5 Sup. Ct. Rep. 221, said: "The general rule is everywhere recognized, that a guardian or trustee, when investing property in his hands, is bound to act honestly and faithfully, and to exercise a sound discretion, such as men of ordinary prudence and intelligence use in their own affairs." In England it has been held by the court of chancery that a trustee who lends money upon personal promise of repayment, without security, does so at his own risk. In regard to the liability of trustees for money deposited in bank, it has been decided in England that personal representatives are not, in the absence of all want of due care and watchfulness, to be held responsible for the loss of money belonging to an

estate which is deposited in a bank of good repute, and in the official name of such representatives. *Swinfen* v. *Swinfen*, 29 Beav. 211. But an administrator will be held liable, if he keeps money in a bank an unreasonable length of time, or where it his duty to invest the fund in safe securities, (*Moyle* v. *Moyle*, 2 Russ. & M. 710; *Johnson* v. *Newton*, 11 Hare, 169;) or to pay it over to newly-appointed trustees, or to pay it into court; or if, having no occasion to keep a balance on hand for the purposes of the trust, he lends the money to the bank on interest upon personal security, not sanctioned by the court, (*Darke* v. *Martyn*, 1 Beav. 525.) In the state of California it has been held that a guardian is not responsible for the loss of funds occurring by reason of his depositing them for safe-keeping in a bank, except when it was known that such bank was unsafe. *Minor's Estate*, Myr. Prob. 230. The same case holds that if a guardian loans trust funds imprudently and without security he must make good the loss. The court of appeals of this state decided, in the case of *People* v. *Faulkner*, 107 N. Y. 477, 14 N. E. Rep. 415, that a surrogate, into whose hands surplus money arising on foreclosure sale of land belonging to an intestate's estate was paid, and by whom it was deposited in good faith with a private banker in good standing and credit, pending proceedings to determine the rights of claimants thereto, was not liable for loss arising from the failure of the banker; that he is only responsible for good faith and reasonable diligence. The court says: "The surrogate was not a public officer appointed to receive or disburse public money; * * * he was to hold the same for distribution. * * * There is nothing in the statute which makes him an absolute debtor for it." The court also says: "If he had been a trustee, and had deposited this money in good faith, without any negligence on his part, in this bank, its loss by the failure of the banker would have been a good defense. * * * It is conceded that if the administrators had deposited the money of their estate in this bank in good faith, and without negligence, they would not have been responsible for its loss." 2 Williams, Ex'rs, (5th Amer. Ed.) 164; 3 Redf. Wills, 394.

From these authorities, observing particularly the expression of the courts of this state, the propositions are deducible that trustees who are directed to invest money upon interest-bearing securities should only accept real-estate securities or government bonds; that they should be held personally liable for any loss which is incurred in the purchase of stock of corporations with trust funds, or from loans made without security; that they are bound to exercise that care in the management of trust property which prudent and intelligent men use in similar private matters; that moneys held by them uninvested may properly be deposited in a bank of good repute and credit; that such deposit should be in the name of the trustee, with his official title, and be kept separate from his private account; that the deposit should not be continued an unreasonable time, and should be subject to demand. The case at bar is difficult to determine on account of the relations of the executor to the bank in question, and the opportunities he had to examine the books, and the fact that the trust funds were kept so long a time in the bank. From the evidence, however, I am satisfied that the executor believed the bank to be in sound condition, and the fact of his having been able to learn the contrary is left in much doubt. The evidence is undisputed to show that he endeavored to obtain proper investment, and that the deposit in the bank was with the assent of the parties in interest, so far as it could be given. It is therefore decided that the executor, as trustee, is not personally liable for the money deposited in the First National Bank, and his account will be settled accordingly. He will be discharged upon turning over to his successor or into court his claim as trustee against the bank. The other questions raised in the accounting are not necessary to be mentioned here.