GEORGE B. FOSTER'S EXECUTRIX

v.

H. M. STONE, ADMR., ET ALS.

OCTOBER TERM, 1894.

*Special administrator. Compounding debts. Heirs es-*
*topped to complain. Administration in part*
*faithful and in part unfaithful. Allow-*
*ance for services and counsel fees.*

1. A special administrator has no authority to compound a dis-
puted claim, but if he does so in good faith, and those in-
terested in the estate are present upon the settlement of his
account and acquiesce in his action, they will be estopped
from afterwards setting up his want of authority.

2. An administrator should be allowed nothing for services ren-
dered in the maladministration of an estate; but if his ad-
ministration has been faithful for a certain period, he may
be allowed for services during that period, although his
subsequent administration was unfaithful.

3. An administrator who has misappropriated to some extent the
funds of an estate, may be allowed for counsel fees upon
a final accounting in the probate court, if the necessity
for such legal services does not arise from the fact of the
misappropriation.

Appeal from an order of the probate court for the district
of Franklin, settling the account of George B. Foster, ad-
ministrator of George W. Foster's estate. Heard upon the
report of a commissioner at the April term, 1894, TAFT, J.,
presiding. Judgment that the estate of George B. Foster

account to the estate of George W. Foster for the amount found due by the commissioner, without credit for the services of George B. Foster as administrator, or for the amount paid for counsel-fees for services upon the settlement of his account in the probate court; that nothing be allowed for storing goods after November 30, 1890, and that six per cent interest be computed on all sums appropriated by George B. Foster from the date of their appropriation, and on all sums in his hands after November 30, 1890. Both parties except.   The opinion states the case.

*Wilson & Hall* and *F. W. McGettrick* for the plaintiff.

The administrator should be allowed for his services during the period that his administration was honest.   *Farwell* v. *Steen*, 46 Vt. 678 ; *Spaulding* v. *Wakefield's Estate*, 53 Vt. 664 ; *Barney* v. *Parsons*, 54 Vt. 623 ; *McCloskey* v. *Gleason*, 56 Vt. 282.

*Hogan & Royce*, *J. Noble Hayes*, and *H. A. Burt* for the defendant.

The administrator misappropriated the funds of the estate. Being thus an unfaithful trustee, he should be allowed nothing for his services.   *Spaulding* v. *Wakefield's Estate*, 53 Vt. 660 ; *Re Edmund Hodges' Estate*, 66 Vt. 70 ; *Blake* v. *Pegram*, 109 Mass. 541 ; 2 Woerner, Am. Law of Admr., 1163, notes, and cases cited.

The burden was upon the administrator to show that the settlement of the Davis claim was beneficial to the estate. Since the commissioner's report does not show this, he should be charged with it.   Wyman's Appeal, 13 N. H. 18 ; *Fridge* v. *Buhler*, 6 La. An. 272 ; *Wilks* v. *Slaughter*, 49 Ark. 235 ; 2 Woerner, Am. Law of Admr., 684, and cases cited ; *Manning* v. *Purcell*, 7 DeG. M. & G. 55 ;

Williams' Executors, 1800, 1802; 7 Am. & Eng. Enc. of Law, 285 and cases cited.

Counsel fees upon the hearing before the probate court should not be allowed, for they were occasioned by the fault of the administrator. 2 Woerner, Am. Law of Admr., 1147, 1148; Shoul., Exrs. & Admrs., s. 544.

Compound interest should have been allowed, or at least annual. Shoul., Exrs. & Admrs., s. 538; *Slade* v. *Slade*, 10 Vt. 195; *Perkins* v. *Hollister*, 59 Vt. 351; *Barney* v. *Saunders*, 16 How. 535; *Shieffelin* v. *Stewart*, 1 John Ch. 620; *Farwell* v. *Steen*, 46 Vt. 678; *Jennison* v. *Hapgood*, 10 Pick. 77; *Blake* v. *Pegram*, 109 Mass. 541; *Thorn* v. *Garner*, 42 Hun. 507; *Hannals* v. *Hannals*, 68 N. Y. 610; *Fay* v. *Howe*, 1 Pick. 527; 2 Woerner, Am. Law of Admr., p. 1138, note, and cases cited; 7 Am. & Eng. Enc. of Law, 429, 430; 2 Kent, Com., (1st Ed.) 188; *McCloskey* v. *Gleason*, 56 Vt. 264; *Spaulding* v. *Wakefield's Estate*, 53 Vt. 660; *Walton, Admx.*, v. *Hall's Estate*, 66 Vt. 455; *DePeyster* v. *Clarkson*, 2 Wend. 77.

TYLER, J.   The commissioner reports that George W. Foster died November 1, 1885 ; that on or about November 15 George B. Foster was appointed special administrator of his estate, and on the 30th he was appointed administrator. George W. had transacted business with two firms of brokers in New York City, one of which at once paid to the special administrator the amount due the estate, four thousand five hundred forty dollars and seventy-nine cents. The other firm refused to pay over unless one Davis, who was an occupant of its office and claimed to have a demand against the estate, was settled with and paid. Davis claimed to have rendered services for George W. in taking charge of his account with the firm, and placing orders with it for the purchase and sale of stocks. Mr. Cross, who was counsel for the special administrator and for Mrs. Foster, widow

of the deceased, examined this claim and the evidence in support of it, was of the opinion that it had merit and should be adjusted, and under his advice it was submitted to the arbitrament and award of two men who were respectively chosen by the special administrator and Davis, and who awarded Davis two thousand four hundred and six dollars of his claim.    Two of the heirs in this state approved of the submission, and advised the payment of the award.    The brokers paid it by direction of the special administrator, and then paid him the remainder in their hands, six thousand eight hundred thirty-six dollars and fifty cents.    It is found that the special administrator and Mr. Cross acted in good faith, and did what they believed was for the interest of the estate in making the settlement.    The account of the said George B. was presented to the probate court, December 1, 1885, and was considered, all the heirs of the estate being present or represented.    Mrs. Foster was present with her counsel.    The Davis claim and the manner of its adjustment were discussed and explained, no objection was made to the allowance and approval of the account as presented, and it was allowed by the court "with the consent or acquiescence of all interested," and no appeal was taken.    The defendants claimed that the sum paid to Davis should be charged to the account of the special administrator.    The commissioner found that it should not be so charged, unless it was held by the court to be chargeable as matter of law.

It is true, as argued by the defendants' counsel, that it was no part of the duty of the special administrator to pay or compound the debts of the deceased.    His duty, as defined by the statute, was to collect and preserve the assets of the estate for the general administrator when he should be appointed, though the statute authorizes a special administrator to commence and maintain suits for the collection of debts.    But though he assumed to act outside of the scope of his duty and to settle a claim in another jurisdiction, it

appears that he acted with the knowledge of the heirs, and that the adjustment of the claim had the approval of all the parties interested in the estate when he settled his special administration account.    The two thousand four hundred and six dollars had never come into his hands, and if the heirs had desired to stand upon the ground that he had not strict legal authority to make the settlement, they might then have repudiated it, and insisted on the collection of the full amount due from the brokers.    Their acquiescence in the settlement and their silence until after the special administrator's decease should estop them from asserting this claim.    Williams on Executors, p. 1800, says that though generally speaking an executor, compounding or releasing a debt, must answer for the same, yet if it appears to have been for the benefit of the trust estate, it is an excuse. Other authorities cited on the defendants' brief are to the effect that the release or compromise of a claim by an administrator will not be upheld, if it appears to have been prejudicial to the interests of the estate, or not to have been beneficial to it.    But here it must be assumed that all the persons interested adjudged that the settlement was beneficial, and it should be treated as if they themselves had effected it.

The commissioner reports that for the year ending December 1, 1886, the administrator was chargeable with receipts from the special administrator and from other sources to the amount of $20,009.51, that his disbursements were $3,410.32, leaving in his hands $16,599.19.    August 10, 1887, the administrator filed an account in the probate court in which he made a charge of $900 for his services to that date.    August 27 he distributed to the heirs about $20,000, and on December 1, 1887, after the payment of certain debts and expenses, he had remaining in his hands $2,375.13.    Thence until July 24, 1888, he kept the funds of the estate intact, and performed all his duties with fidel-

ity. The commissioner finds that $900 was "a fair, reasonable and legal charge, as of that date, for services rendered as administrator down to that time." July 24, 1888, he appropriated to his own use $900 of the funds of the estate, and thereafter at different times prior to his death on July 28, 1893, he had appropriated in all the sum of $5,429.80, which included the balance of $2,373.13 in his hands December 1, 1887, and nearly all his net receipts after that date. Some assets that had not been converted into money, and about $300 found on deposit in banks were taken possession of by the administrator *de bonis non*.

On application to the probate court the administrator was cited to render his account, and in August, 1892, he filed an account supplemental to that rendered in August, 1887, and on December 2, 1892, he filed a further supplemental account. The commissioner found that the estate should have been closed by November 30, 1890, that delay after that date was through the fault of the administrator and that compensation thereafter should be denied him. The administrator charged twelve dollars and fifty cents a month for his services from August 10, 1887, till the filing of his final account. The commissioner allowed the charge per month to November 30, 1890, making four hundred ninety-five dollars and eighty-three cents, and sixty-five dollars for storing the goods of the estate to that date.

The administrator charged in his first account two hundred thirty-three dollars, amount paid as counsel fees, and in his supplemental account further sums amounting to three hundred and twenty-three dollars and ninety-three cents, all which the commissioner found were reasonable and for necessary legal services about the estate, and if proper to find as a matter of fact, that the administrator was entitled to have them allowed. The defendants conceded that the charges were reasonable and proper for the services rendered. It is found that after George B. Foster's de-

cease his executrix, Frances E. Foster, became a party in the accounting before the commissioner; that counsel who had acted for the said George B. then acted for the executrix and rendered services for which they charged one hundred sixty-two dollars, which the commissioner found reasonable and for necessary legal services.

The defendants excepted to the allowance by the commissioner of the nine hundred dollars and four hundred ninety-five dollars and eighty-three cents for the administrator's services, the sixty-five dollars for storage of goods of the estate, all the items for counsel fees and the two thousand four hundred and six dollars for the settlement of the Davis claim. The county court held that the items for the administrator's services and all the items paid counsel for services rendered in the hearings and otherwise in the settlement of the administrator's account in the probate court should be disallowed, but allowed counsel fees for services rendered in collecting the assets, the item for storage and the Davis claim. Both parties excepted to the judgment. The defendants claim that none of the charges for services and counsel fees should be allowed because of the appropriation of funds by the administrator as above stated.

As most of the assets had been collected and distributed by the administrator prior to December 1, 1887, it seems from the report that his services for which four hundred ninety-five dollars and eighty-three cents was allowed were mainly about the funds which he appropriated. As the charge is in gross, and as it does not appear that any part of it was legitimate, it must be disallowed. *Farwell* v. *Steen*, 46 Vt. 678; *Re Hodges' Estate*, 66 Vt. 70.

The charge of nine hundred dollars for services to August 10, 1887, was properly allowed. The rule that only the faithful trustee is entitled to compensation, applied to this administrator during this period. The funds had been kept intact, and no claim is made that the services were not ben-

eficial and the charges reasonable.   The items of thirty-two dollars and two hundred dollars for attorneys' fees stand upon the same ground.   It is within the rule given in Williams on Executors, that an executor or administrator is entitled to be allowed all reasonable expenses which have been incurred in the conduct of his office except those which arise from his own fault.   *Shaw* v. *Bates*, 53 Vt. 360.

In *Jennison* v. *Hapgood*, 10 *Pick.* 77, it was alleged that the executor had come into possession of assets for which he had never accounted, that his account rendered contained gross errors, and that fraud had been practiced by him in stating and settling his account in the probate court.   Upon an issue joined, the jury found that the executor's accounts were fraudulent, and that the several decrees of the probate court allowing them "were obtained by the false affirmations and oaths of the executor and not honestly and in good faith."   The Supreme Court said: "The appellants contend that no compensation ought to be allowed because the appellee has been found guilty of unfaithful administration. This consideration, however, ought not to be blended with the claim for compensation, so far as the services of the appellee have been beneficial to the heirs."   In the notes to Williams on Executors, p. 1853, the same rule is stated with the qualification that compensation will be denied where the administrator's wilful default or gross negligence has occasioned loss to the estate.   This is illustrated in *Brennan's Estate*, 65 Pa. St. 16, where the administrator wrongfully gave up a promissory note of the value of five hundred dollars so that it was lost to the estate.   His commission of four hundred eighty-four dollars was denied him.

In 2 Woerner's Law of Admin., s. 526, the rule is laid down that compensation must be refused if the administrator has been guilty of wilful default or gross negligence in the management of the estate whereby it has suffered loss. This is deduced from the cases cited by the author in the

notes and applies where there has been a general mismanagement of the estate.   In the same section he says that to the extent to which the estate has been properly administered and on the amounts which the administrator or his sureties pay to make up for the losses by devastavit or maladministration, the administrator should be allowed such commission as the statue provides—when the statute fixes the compensation—and cites *Jennison* v. *Hapgood* among other cases.

The subsequent items for attorneys' fees, amounting to three hundred twenty-three dollars and ninety-three cents, were for services rendered to the administrator from December 1, 1892, to July 28, 1893, and should be disallowed but for the finding that the charges were reasonable, that the services rendered to the administrator were necessary for a proper accounting, and that the necessity was not created by the administrator's delay in settling the estate, nor by his appropriation of the funds.   "The accounting related to a wide variety of matters of considerable intricacy, to transactions with reference to property in different parts of the western states, to the history of different suits and causes of litigation and to the transactions with reference to the Davis claim."   Upon the finding this item should be allowed.

The report lacks this express finding in respect to the legal services rendered to George B. Foster's executrix, but it is found that the charges were reasonable, "and that the services rendered were necessary to the executrix in the accounting."   It was her duty to finish the accounting, and the one hundred sixty-two dollars should be allowed.

The commissioner found that the charge of fifteen dollars a year for the storage of goods was reasonable and proper. It had no connection with the administrator's wrong doing and should be allowed.

Hill on Trustees, p. 522 *et seq.*, says that the court will endeavor as far as possible to replace the parties

in the same situation as they would have been if no breach of trust had been committed.   Where the property has been improperly disposed of and can be followed *in specie* the trustee will be compelled to reconvey it for the purposes of the trust.   In taking the account against the trustee, he will be charged with the amount of principal and income, which might have been received from the trust estate if no breach of trust had been committed.   Where a strong case of corrupt or improper conduct is established against the trustee, or if he has acted in direct contravention of an express trust to accumulate, he will be charged in addition to the usual rate of interest with annual or half yearly rests, in the nature of compound interest.   In *Farwell* v. *Steen* the guardian received some securities bearing annual interest and some simple interest, converted them into money, mingled it with his own and invested the commingled funds where he received more than six per cent interest; *held* that he was chargeable with annual interest on the whole trust fund, and was disallowed compensation.   *Shaw* v. *Bates*.   The subject of interest on appropriated funds is well discussed by Walker, J., in *Perkins* v. *Hollister*, 59 Vt. 348.   In *McCloskey* v. *Gleason*, 56 Vt. 264, the court said:

"Instead of relaxing the rule charging the trustee who so intermingles the trust estate with his own that he cannot tell what property belongs to the estate, nor what gains he is making thereon—with the highest legal rate of interest, and allowing him nothing for his services, it should be made more stringent." *Schouler on Exrs. and Admrs.*, s. 538.

Upon the facts disclosed there is no occasion to apply a different rule in the present case from the one adopted by this court in the cases above cited.

The general debit balance when George B. Foster died July 28, 1893, was five thousand seven hundred twenty-two dollars and forty-six cents.   Deducting two hundred ninety-two dollars and sixty-six cents, the amount found in

banks, leaves five thousand four hundred twenty-nine dollars and eighty cents, which is the aggregate of the appropriations.

The several sums appropriated, are chargeable to George B. Foster's estate, with annual interest from their dates to the first day of this term. As the account is stated, the item of four hundred ninety-five dollars and eighty-three cents was an appropriation and must be charged at the same rate of interest, making in all seven thousand five hundred five dollars and sixty-seven cents, from which should be deducted one hundred sixty-two dollars, allowed the executrix for counsel fees, and interest.

*Judgment reversed and judgment that the plaintiff account for seven thousand three hundred thirty-four dollars, to be certified to the Probate Court.*