# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

---

D. P. WALWORTH'S ESTATE *v.* B. W. BARTHOLOMEW'S ESTATE.

January Term, 1903.

Present: TYLER, MUNSON, START, WATSON, STAFFORD, and HASELTON, JJ.

Opinion filed October 13, 1903.

*Administrator—Accounting—Due Diligence—Burden of Proof—Interest—Commingling Funds—Services.*

An administrator who gives his personal note in payment of a claim against the estate is entitled to a credit in his account for the amount thereof.

Since the commissioner was warranted in assuming that the administrator had given his personal obligation for a distributive share, credit to the administrator for the amount thereof was properly allowed.

When heirs are paid different sums for a partial distribution, it is for the Probate Court on final decree to equalize the difference.

The burden is on the administrator to show that an uncollected note belonging to the estate was uncollectible.

That an administrator took by foreclosure the property securing such note, which was then worth the amount of the note, and disposed of it for the benefit of the estate, is sufficient to rebut the presumption of negligence in allowing the note to outlaw.

When an administrator has wrongfully transferred to himself stock belonging to the estate, the dividends afterwards received thereon are chargeable to him, or his estate, as of the time they were received.

It was proper for the commissioner to allow the plaintiff estate to withdraw certain items of its specification.

An administrator who has used the funds of the estate for his own profit will be allowed nothing for the care of the funds, and will be charged with annual interest; and this rule applies when the account is presented by his administrator.

If the settlement of the estate involves other duties, faithfully and legally performed, such administrator is entitled to compensation therefor.

When an estate consists of income producing property, and the settlement properly covers a number of years, the Probate Court may, on final settlement, credit the administrator's services at the end of each year, though no previous accounts have been rendered.

When the settlement of a deceased administrator's account is delayed by causes not chargeable to him or his representative, it will be made as of the date of said administrator's death, and simple interest only will be allowed on the balance then in his hands.

So far as the expense of settlement of a deceased administrator's account is made necessary by his improper conduct, it falls upon his estate; otherwise, it may be charged in his account.

APPEAL FROM PROBATE COURT.   Heard on a commissioner's report and exceptions thereto, at the December Term, 1902, Orange County, *Tyler, J.,* presiding.   *Pro forma* judgment for the defendant estate for the sum named in the report.   The plaintiff estate excepted.

*Young & Young* for the plaintiff estate.

The commissioner having found that the administrator's services were worth $150.00 per year, this allowance should be credited at the end of each year.   Otherwise, the adjustment of interest on the annual balances would be unjust to the administrator.

A balance should be stated at the end of each year and interest computed thereon to the time the report is made, without a rest at the time of Walworth's death. *Landon* v. *Castleton,* 30 Vt. 285; *Spencer* v. *Woodbridge,* 38 Vt. 492; *Davis* v. *Smith,* 48 Vt. 52; *Flannery* v. *Flannery,* 58 Vt. 576; *Yearteau* v. *Bacon's Est.,* 65 Vt. 516.

The Jennie E. Walworth note was given by the administrators to discharge so much of the indebtedness of the Bartholomew estate. The Walworth estate is entitled to credit for the amount of it.

The objections to the allowance for services performed by Walworth were unfounded. The commissioner does not find that the funds of the estate were commingled with those of the administrator, and this fact cannot be presumed. *Darling* v. *Ricker,* 68 Vt. 471; *Wolcott* v. *Hamilton,* 61 Vt. 79.

Simple interest only should be allowed on the funds in Walworth's hands. Such was the agreement between the administrators, and such would be the rule of law under the circumstances. *In re Hall's Est.,* 70 Vt. 458.

The $5,000 paid to the administratrix of George H. Walworth was through an allowance of the commissioners on George's estate. That allowance must have been based upon an agreement to pay that sum.

The commissioner was correct in not adding interest upon the bank dividends received by Walworth. *Landon* v. *Castleton,* 30 Vt. 285; *Newell* v. *Keith's Est.,* 11 Vt. 214; *Evarts* v. *Nason's Est.,* 11 Vt. 122.

The commissioner was also right in not allowing anything on account of the Prescott, Craigie, and Palmer notes. Negligence must be proved. It is never presumed. *McCluskey* v. *Gleason,* 56 Vt. 264.

The Ramsdell notes were paid in full by the decree on the land securing them, though the whole series was not included in the foreclosure.

*Cook & Williams* and *F. J. Martin* for the defendant estate.

The Jennie E. Walworth note cannot be allowed, because it was never paid. The fact that it was not paid and that Walworth did not charge it in his account indicates that it was a personal obligation, and that it had been discharged.

The Ramsdell note should be charged to Walworth. They were not collected and had outlawed when turned over to the present administrator. The same is true of the Craigie and Palmer, and the Prescott notes. In the absence of a finding that they were not collectible they should be charged, with interest. *McCluskey* v. *Gleason,* 56 Vt. 264; *Holmes* v. *Bridgeman,* 37 Vt. 28; *In re Hall's Est.,* 70 Vt. 458.

The dividends on the bank stock should be charged as of the dates they were received.

Nothing should be allowed for Walworth's services in view of the manner in which the business was conducted, and annual interest should be charged on balances found in his hands.

MUNSON, J. B. W. Bartholomew, of Washington, in the County of Orange, died intestate in February, 1873. His only heirs were Armina P. Braley, and George H. and Jennie E. Walworth, children of deceased sisters. N. W. Braley, of Barre, the husband of one of the heirs, and D. P. Walworth, of Coventry, the father of the other two, were appointed administrators. George H. Walworth died in 1876, leaving a widow and children. Jennie E. Walworth died in 1886, with-

out having married.  N. W. Braley, one of the administrators, died in 1880, and B. W. Braley, his son, and Joel Foster, were appointed his administrators.  D. P. Walworth, the other administrator, died in 1887, and administration upon his estate was granted to E. A. Stewart and George D. Walworth. After N. W. Braley's death, D. P. Walworth was sole administrator of the Bartholomew estate, and B. W. Braley acted as his agent in looking after matters in Washington and vicinity.  Neither N. W. Braley and D. P. Walworth jointly, nor D. P. Walworth as surviving administrator, presented any account to the Probate Court.  Upon D. P. Walworth's death, B. W. Braley was appointed administrator *de bonis non* of B. W. Bartholomew's estate, and in 1888 he cited the administrators of D. P. Walworth's estate before the Probate Court to settle the account of their intestate as administrator of the Bartholomew estate.  That proceeding is the one now before us.

The inventory showed an estate of some over $3,000, but $150,000 or more came into the hands of the administrators. A few small debts were allowed, which were soon paid, and after this the families of the original administrators were the only persons interested in the estate.  In 1874 the administrators distributed $120,000 of the estate among the heirs.  A further sum of $15,000 was distributed in 1884.

At the time of his death, B. W. Bartholomew was administrator with will annexed on the estate of Charles White, and had most, if not all, the estate in his hands in the shape of securities.  The three persons above named as heirs of Bartholomew were among the legatees named in this will, and the interests of most, if not all, the other legatees had been purchased by N. W. Braley.  H. A. White was appointed administrator *de bonis non* of Charles White's estate, and

under an arrangement between him and the administrators of Bartholomew, the latter gave their joint notes in payment of the amounts coming from the White estate to said heirs and to Braley. Item 217 of the Walworth specification is a credit claimed for $1,565.21, the amount of the note given to Jennie E. Walworth. The Bartholomew estate objects to its allowance.

There can be no doubt as to the nature of the transaction. The administrator of the White estate, instead of requiring the Bartholomew estate to pay over the funds needed to meet these demands, permitted the administrators of Bartholomew to satisfy them by a direct payment; and the persons entitled to payment were willing to accept the notes of the administrators. In giving their notes, the administrators advanced so much for the benefit of the estate, and became entitled to corresponding credits. This view of the transaction leaves no ground for the objections urged; and, with the administrator's interest account adjusted as it will be, the credit may properly stand as of the date of the note, without inquiring whether the estate then had funds available for the payment. The item was properly allowed.

Item 361 of the Walworth specification is a credit of $15,000 for money distributed to the heirs. The Bartholomew estate claims that the $5,000 included therein as the share of George H. Walworth should be disallowed. The commissioner finds that the shares of Mrs. Braley and Jennie E. Walworth were paid at the time, but says there was no evidence that the George H. Walworth share was then paid. George H. Walworth had been dead about eight years at this time, and his widow was the administratrix of his estate. She presented a claim for this $5,000, and interest, against the estate of D. P. Walworth, and it was allowed and paid. Noth-

ing further appears in regard to this. The claim could be allowed only upon the ground that it was the personal obligation of the deceased, and this commissioner might fairly assume that the administratrix had accepted the obligation of D. P. Walworth, in some form, in satisfaction of the claim of George H. Walworth's estate against the Bartholomew estate for his share in that distribution; and upon this basis the claim would stand like the preceding item. The allowance is sustained.

Item 212½ is a charge under date of March, 1874, for $240 paid to George H. and Jennie E. Walworth. This charge is made to equalize the distribution of 1874. That distribution was by a division of the estate's holding in the stock of the Barre National Bank, then worth $120 a share. George H. and Jennie E. each had 333 shares, and Mrs. Braley 334. No payments corresponding to this item were made. But it appears that the commissioners on D. P. Walworth's estate allowed to George H. Walworth's estate $73.33 as of December 13, 1887, for a one-third share of stock and dividends from July, 1874. The principal of this sum might be allowed as of March, 1874, on the ground indicated in disposing of the preceding item. But if D. P. Walworth adjusted the George H. Walworth share by assuming the amount indicated by the claim afterwards allowed against his estate, that affords no ground for crediting his account with a larger sum. Jennie E. Walworth lived twelve years after the distribution, and there is nothing to indicate that any adjustment of this difference as regards her share was ever attempted. The interest charge of the administrator cannot be reduced by crediting him, as of the date of the distribution, with payments which he did not make or assume. It is for the Probate Court to equalize this difference among the heirs in mak-

ing its final decree of the balance found in the administrator's hands.

After B. W. Braley's appointment as administrator *de bonis non,* the administrators of D. P. Walworth turned over to him the papers of the Bartholomew estate; but for some reason not appearing certain notes were not included, which became barred by the statute without any attempt having been made to collect them. Items 15½, 16, and 17 of the Bartholomew specification are charges for the amount of these notes. It is evident that the statute ran upon the notes covered by the first two charges before Mr. Walworth's death. As to these the commissioner reports that he is unable to find that they were collectible. This will not justify their disallowance. The burden was upon the administrator to show that they were not collectible. To hold otherwise would be inconsistent with our system of probate accounting, and with our decisions upon questions of like nature. It was held in *McCloskey* v. *Gleason,* 56 Vt. 264, 48 Am. Rep. 770, that, when money of the estate is retained by an agent employed to collect it, the burden is upon the administrator to show that he has exercised due diligence; and in *Blodgett's Est.* v. *Converse's Est.,* 60 Vt. 410, 15 Atl. 109, that a financial agent who holds interest-bearing securities is presumed to receive interest thereon, and that the burden is upon him to show that he has not. It is very generally held that the burden is upon the administrator to account for a failure to collect. 11 Am. & Eng. Enc. Law, (2d ed.) 1002, 1004, 1201, citing *Brazeale* v. *Brazeale,* 9 Ala. 491; *Moffatt* v. *Loughridge,* 51 Miss. 211; *Brooker* v. *Armstrong,* 93 Mo. 49; *O'Connor* v. *Gifford,* 117 N. Y. 275; *Stiles* v. *Guy,* 16 Sim. 230; *Matter of Hosford,* 27 N. Y. App. Div. 427, 50 N. Y. Supp. 550.

The securities covered by Item 17 were three witnessed notes with a good indorser, part of a series of twelve mortgage notes. The three notes had some ten years to run as regards the statute at the time of D. P. Walworth's death, but were barred when delivered to the administrator *de bonis non.* The entire series belonged to the estates of B. W. Bartholomew and N. W. Braley, the first owning seventy-one per cent., and the other twenty-nine. In 1882, D. P. Walworth, administrator of the Bartholomew estate, and B. W. Braley, administrator of the Braley estate, joined in foreclosing the mortgage, each signing the petition personally. These three notes were not embraced in the foreclosure. The commissioner finds that at the time of the decree the property was worth the amount of all the notes, and that it was taken possession of by the two estates, and afterwards disposed of for the benefit of both. The present finding as to the value of the property is certainly enough to indicate that Walworth had reasonable ground for treating the three notes as satisfied by the decree, although not included in the foreclosure, and foregoing suit against the endorser. So the facts reported are sufficient to rebut the presumption of negligence that would otherwise arise from the possession of notes barred by the statute.

There came into the hands of the administrators as a part of Bartholomew's estate twenty shares of the stock of the Lamoille County Bank, and a few months after his appointment Mr. Walworth, with the knowledge of his co-administrator, had the stock transferred to himself individually, and it remained so until his death. His administrators found nothing to indicate that it was not his property, and received and held the dividends for about ten years before transferring it to Bartholomew's estate. The commissioner has charged Walworth's estate with these dividends in bulk as of December,

1892, and Bartholomew's estate claims that they should be entered each year so as to carry interest. We think the account should be so made. But for the administrator's improper transfer, the ownership would have been known, and the stock would have gone into the hands of the administrator *de bonis non* upon his appointment, and the estate would have had the benefit of the dividends from the time of their payment.

Items 350 to 356 of the Walworth specification represent matters growing out of N. W. Braley's share in the settlement of the Bartholomew estate, and the adjustment thereof made between the Bartholomew and Braley estates. These were withdrawn at the hearing with the consent of the commissioner, and no evidence was offered to support them. The Bartholomew estate objected to this, and now asks the Court to disallow the items. We see no reason to question the propriety of the course taken by the commissioner.

The remaining questions relate to allowances for services and interest. The commissioner has allowed Walworth's estate $2,175 for his services, being $150 per year for the whole period, crediting the same in bulk at the date of his death; and has allowed further sums for the services of his administrators in preparing and settling his account, crediting the same annually; and has charged his estate with simple interest on annual balances both before and after his death. It is claimed in behalf of the Bartholomew estate that the handling of its funds was such that nothing should be allowed Walworth or his administrators for their services, and that his estate should be charged the highest rate of interest known to the law. The Walworth estate claims that it should have the benefit of annual credits for the services of its intestate, that simple interest only should be charged, and that no rest should be made at the

date of his death in computing interest on the annual balances.

The commissioner says that he fails to find such a commingling of the funds of the estate with the administrator's funds, as, in his opinion, would justify a charge of interest at the highest rate. This involves a conclusion of law, and does not relieve the Court from an examination of the facts reported. The finding that the administrator acted in good faith does not dispose of the matter. Back of this lies the question whether he acted in conformity with the established rules by which the duties and liabilities of administrators are determined. *McCloskey* v. *Gleason,* 56 Vt. 264, 272.

August 15, 1873, about six months after their appointment, D. P. Walworth and N. W. Braley, the two administrators, agreed in writing that whatever funds belonging to the estate had come into the hands of either, except a certain bank deposit, should be accounted for at six per cent. interest. $6,812.33 came into Walworth's hands on that day, but his books do not show what interest he received upon this sum, nor upon the balance thereof, if any, remaining in his hands at the close of the year. He kept accounts in the form of debt and credit and memoranda, from which a statement could be made of the amount of the estate's funds in his hands. These accounts did not show how the funds were invested, but showed receipts and payments. It appears from the account as presented that there was generally a balance of several thousand dollars in his hands belonging to the estate. It did not appear that these moneys were kept in any other name than his own, individually, except that for three years he kept a small bank account as administrator. During the time he held the funds of the estate, he was receiving interest at a rate higher than six per cent. It did not appear from the books, and was not shown otherwise, whether the funds loaned at

more than six per cent. belonged to the estate or to himself personally.    It did not appear how the balance in his hands at the date of his death has been invested since that time, or whether it has been invested.

We have several cases bearing upon the questions presented by the above statement.    In *Farewell* v. *Steen,* 46 Vt. 678, the guardian collected the securities belonging to his ward, mingled the avails with his own money, and gave no account of the exact amount of interest included; and made from the fund so formed investments in which the moneys of the ward could not be traced directly and wholly, and received therefrom more than six per cent. interest; and the guardian was charged with annual interest on the whole trust fund.    Here the referee had allowed the guardian for taking care of the fund, and no question was raised in regard to that; but the Court took occasion to say that a guardian should not be allowed compensation for taking care of his ward's money while he was the borrower of it.    In *McCloskey* v. *Gleason,* 56 Vt. 264, 272, the administrator had mingled the trust estate with his own, made no separate investment, and kept no separate account of the fund nor of the interest received; and the Court held that he thereby made himself the debtor of the estate, and was chargeable with the highest legal rate of interest on the money so intermingled, and could be allowed nothing for his services in caring for it.    Other cases hold the same.    *Spaulding* v. *Wakefield's Est.,* 53 Vt. 660, 38 Am. Rep. 709; *Re Hodges' Est.,* 66 Vt. 70, 44 Am. St. Rep. 820.    In *Barney* v. *Parsons,* 54 Vt. 623, 41 Am. Rep. 858, the guardian included a sum due to his ward in a note payable to himself, and the promisor became bankrupt, and the money was lost.    The Court construed the report as containing an affirmative finding of honesty and diligence, and in view of this, and of the

fact that an exact record of the ward's interest in the note was kept, held the guardian discharged.   This case, as far as it is in conflict with the rule above indicated, is repudiated in *Re Hodges' Est.*   In *Perkins* v. *Hollister,* 59 Vt. 348, 7 Atl. 605, the executor had in good faith mingled and loaned the funds of the estate with his own, but disclosed all the profits; and, having suffered losses without fault, claimed no deduction therefor, and claimed nothing for his services; and was found by the commissioner to have received less than simple interest on the fund; and upon this case the Court charged him with simple interest only.

It is evident that these funds went into the body of Mr. Walworth's estate, and that the balance has remained there; that they have not been and cannot be distinguished or separated from his individual property; and that while the funds were so held he was making loans and receiving more than six per cent. interest.   In these circumstances it must be presumed that some of the administrator's extra gains were due to the possession of this fund.   There can be no doubt as to what the conclusion would be upon these accounts if the administrator were rendering them in person, and we know of no reason why the result should be different when the settlement is made by his personal representatives.   There is nothing better settled, nor more universally held, than that a trustee who has used the fund for his own profit cannot have pay for caring for it; and it is equally well settled in this State that he shall also be charged with annual interest.

But the investment of this cash balance was but a part of the duty which devolved upon the administrator in the management of this estate.   There was another branch of administrative duty in which the service of the administrator was not only honest, but in strict accord with legal require-

ments.   It appears that the investments remaining after the distribution of 1874 consisted largely of farm mortgages and other loans on note.   Much of the property held as security came into the hands of the administrators by foreclosure or otherwise.   Farms were held and rented, awaiting an opportunity to sell; and were finally sold with small payments down, and in some instances were taken back and sold over again in the same way.   Complications arose out of Bartholomew's connection with unsettled trusts, and the estate was involved in a good deal of litigation, some of which was of an important character.   Considerable time and attention was given to the adjustment of controversies and to the trial of cases.   It is evident that a substantial part of the compensation allowed the administrator was earned in the line of service above indicated, and the forfeiture which the law enforces for the improper investment of funds should not be extended to this part.   This is but another application of the principle adopted in *Foster* v. *Stone,* 67 Vt. 336, 31 Atl. 841.

When the estate consists of income-producing property, and the circumstances are such that its settlement properly covers a number of years, it is clearly within the discretion of the Probate Court, even in making a final settlement where no previous accounts have been rendered, to credit the services of the administrator for each year at the end of the year.   We think that in the circumstances of this case that method may properly be adopted.

The course taken by the commissioner in ascertaining the amount of the estate at the date of Walworth's death, and making that the basis of a new computation, accords with the nature of the accounting and the practice as we understand it. The personal representative of a deceased administrator does not take and administer his trust, but proceeds at once to

settle his account, ascertain the balance in his hands, and pay it over to his successor. This points to an accounting as of the date of his death. The fact that the settlement of this account has occupied years does not take the case out of the rule.

Ordinarily, the account of a deceased administrator will be settled in such time that the question whether the interest allowed after his death shall be simple or annual will not be important. But here sixteen years have elapsed since the death of the administrator, during fifteen of which the account has been in process of settlement. It is obvious that this long delay is at most but remotely chargeable to the administrator's method of handling the estate. For fifteen years the matter has been in the hands of the Courts, and subject to such orders as the administrator of Bartholomew might apply for and show himself entitled to. The facts reported regarding the delay are not such as to charge the Walworth estate with the consequences of it. We think that, when annual interest is allowed, and the charges for Walworth's services in caring for the fund are disallowed, in arriving at the balance in Walworth's hands at the time of his death, the matter will be fairly disposed of by the allowance of simple interest on such balance.

The only question remaining relates to the charges of Walworth's administrators for their services and expenses in settling his account. So far as those services and expenses were made necessary by any improper conduct of the administrator, the loss must fall upon his own estate instead of that of Bartholomew. Otherwise they are a proper subject of charge. The commissioner will make any revision of his allowance that may be required by this holding.

*Judgment reversed and cause remanded that the report may be recommitted to the commissioner with instructions to*

*determine the yearly sums earned by the administrator in the management of the estate not including the care of the funds in his hands, and otherwise adjust the account in accordance with this opinion.*