WILLIAM L. SCOVILLE *v.* JAMES W. BROCK.

October Term, 1903.

Present:  ROWELL, C. J., MUNSON, START, WATSON, and HASELTON, JJ.

Opinion filed May 21, 1904.

*Guardian and Ward—Final Account of Guardian—Settle-*
*ment—Bill to Vacate—Demurrer—Laches of Ward—*
*Statute of Limitations—V. S. 2810.*

The record of judicial proceedings is not conclusive in a proceeding
   brought expressly to vacate them for fraud.
When the Probate Court specifically decrees to a minor certain stocks
   and bonds of nonresident corporations, as his interest in his
   father's estate, his guardian should not be charged with a breach
   of duty merely because he did not refuse to receive said securi-
   ties as his ward's interest in said estate, and demand cash.
On demurrer to a bill brought to set aside the allowance of the final
   account of a guardian by which certain securities were decreed
   to his ward, the allegations that the defendant, contriving and
   intending to deprive the orator of his rights in the premises, and
   with intent to prevent him from calling the defendant to account
   for his breach of trust as guardian, represented that he had used
   all due care in managing orator's estate; that, as the investments
   had been made before the securities came into his hands, he was
   under no duty to change them; that loss by depreciation of the
   securities was without his fault, and that he had fully performed
   all the duties of his trust; and the orator, fully believing and
   relying on these false representations, did not object to receiving

his property in the form in which it was offered to him, sufficiently set forth fraud on the part of the guardian.

A bill against the orator's former guardian for a breach of trust, which alleges that it was defendant's duty to have sold certain stocks and bonds of nonresident corporations in which the estate was invested, for which there was a market in Vermont, and that, if defendant had exercised ordinary care, he would have ascertained that such investments were injudicial and were likely to become worthless, as they subsequently did, is not objectionable for want of equity on the ground that if defendant had ascertained these facts, and had then attempted to sell the securities without disclosing to the purchaser what he knew, he would have been guilty of fraud, and if he disclosed all he knew no one would buy; because he could have offered them for sale at the purchaser's risk, under the rule of *caveat emptor.*

As against the orator, who seeks to set aside the allowance of the final account of his former guardian for fraud, time does not necessarily begin to run when the confidential relation ends, but only when the influence of that relation ceases to operate upon him so he can act independently of it.

BILL IN CHANCERY. Heard on demurrer to the amended bill at the September Term, 1902, Washington County, *Stafford,* Chancellor. Demurrer sustained, and bill dismissed. The orator appealed. This case has been once before in the Supreme Court. See 75 Vt. 243.

In respect of the defendant's alleged breach of duty in not refusing to receive the securities in question, besides what is said in the opinion, the bill merely states that, about September 1, 1890, defendant was appointed guardian of the orator, who was then seventeen years of age; that on September 19, 1890, by decree of the Probate Court for the district of Washington, the stocks and bonds mentioned in the opinion were specifically decreed to the orator out of the estate of his father; that the defendant, as guardian of the orator, immediately thereafter received said securities from the administrator of said estate; that it was the duty of the

defendant, as such guardian, "not to have received or accepted the orator's property in such unlawful and objectionable investments in stocks and bonds." The opinion sufficiently states the other allegations of the bill.

*William L. Scoville* and *Edward H. Deavitt* for the orator.

The Court of Chancery has original jurisdiction of all cases of this kind. *Wade* v. *Pulsifer*, 54 Vt. 45; Woerner Guardians, § 160; Perry Trusts, § 1, 802; *Brown* v. *Est. of Sumner*, 31 Vt. 671.

The decree of the Probate Court allowing the final account of the defendant, as guardian, cannot be attacked collaterally except for causes which render it void. Fraud does not render a judgment void, but is merely the ground of relief in equity. Black, Judgments, § 245; *Porter* v. *Gile*, 47 Vt. 620; *Doolittle* v. *Hilton*, 28 Vt. 819; *Probate Court* v. *Winch*, 57 Vt. 282; Van Fleet Collateral Attack, § 826; *Probate Court* v. *Slason*, 23 Vt. 306; Bispham Eq. 198; *Delaney* v. *Brown*, 72 Vt. 344.

The defendant was bound to disclose to his ward all the facts and circumstances which he himself knew or ought to have known which would enable the orator exactly to comprehend the character of the act which he did in refraining from casting the loss upon the guardian, and to know what were his legal rights. Bispham Eq. § 283; *Harvey* v. *Clarke*, 4 Russ. 34; *Willan* v. *Willan*, 16 Ves. 72; *Sturge* v. *Sturge*, 12 Beav. 229; *Lloyd* v. *Atwood*, 2 De G. & J. 614; Bispham, §§ 280-293 inc.; *Tate* v. *Williamson*, L. R. 2 Ch. 61; *Smith* v. *Kay*, 7 H. L. Cas. 771; *Coward* v. *Hughes*, 1 Kay & J. 443; *McCarthy* v. *Decaix*, 2 Russ. & M. 614; *Regenell* v. *Sprye*, 8 Hare 221; *Hylton* v. *Hylton*, 2 Ves. Sr. 547; *Bur-*

*rows* v. *Wallis,* 2 De G. M. & G. 233; *Hugenin* v. *Baseley,* 14 Ves. 273; *Hunter* v. *Atkins,* 3 Myl. & C. 135; *Gregory* v. *Orr,* 61 Miss. 307.

It was the duty of the defendant to have refused to receive the stocks and bonds, and to have demanded cash. Woerner Guardians, § 160; Perry, Trusts, § 1; *Mills* v. *Hoffman,* 26 Hun. 594.

He certainly should have endeavored within a reasonable time to get the securities into a form approved by law. In retaining the investment he acted at his peril. Bispham Eq., § 139; Lewin Trusts, ch. 14, § 5; *Powell* v. *Evans,* 5 Ves. 859; *Tebbs* v. *Carpenter,* 1 Madd. 298; *Clough* v. *Bond,* 3 Milne & Cr. 496; *Lowson* v. *Copeland,* 2 Brown C. C. 156; *Hemphill's Appl.,* 18 Pa. 303; Perry Trusts, §§ 493, 440, 465; *Mills* v. *Hoffman,* 26 Hun. 594; *Kinmouth* v. *Brigham,* 5 Allen 270; *Baskin* v. *Baskin,* 4 Lans. 90; *Goodwin* v. *Howe,* 52 How. Prac. 134.

The stocks and bonds were improper and unlawful investments of trust funds. *Hemphill's App.,* 18 Pa. 303; *Gray* v. *Fox,* 1 N. J. Eq. 259; *King* v. *Talbot,* 40 N. Y. 76; Lewin on Trusts, § 5; *Powell* v. *Evans,* 5 Ves. Jr. 859; *Tebbs* v. *Carpenter,* 1 Madd. 298; *Ormiston* v. *Olcott,* 84 N. Y. 359; *Kinmouth* v. *Brigham,* 5 Allen 270; *Armfield* v. *Brown,* 73 N. C. 81; Bispham Eq., § 145; *Potter* v. *Hiscox,* 30 Conn. 508; *McClosky* v. *Gleason,* 56 Vt. 264; *Kimball* v. *Reding,* 31 N. H. 352; *Judge* v. *Mathes,* 60 N. H. 433.

*M. E. Smilie* for the defendant.

ROWELL, C. J.   This is a bill to impeach a decree of the probate court allowing the final account of the defendant as guardian of the orator, because of the alleged fraud of the defendant in procuring the orator's approval of said account.

When the case was here before—75 Vt. 243, 54 Atl. 177—the bill was held bad on demurrer because the allegations that said approval was obtained by fraud were not followed by averments sufficient to carry the effect of the alleged fraud into the decree, and the sufficiency of the allegations of fraud was not considered. Since then the bill has been amended, and alleges that said decree was made solely by reason of said approval, and without consideration by the court of any other facts and circumstances, and without any consideration whatever by the court.

The bill is again demurred to, and it is objected that the allegation that said decree was made solely by reason of said approval and not otherwise is not well pleaded, as it contradicts the record set out in the bill, which shows that the defendant swore to the justness and truth of his account before the probate judge himself. But the rule as to the conclusiveness of the record of judicial proceedings does not apply when process is brought bearing directly upon them for the purpose of vacating and setting them aside for fraud. In such cases the record may be contradicted. *Godfrey* v. *Downer,* 47 Vt. 653.

It appears from the bill that on September 19, 1900, the probate court specifically decreed the property in question to the orator, then a minor, as legatee under his father's will; that the property consisted of divers shares of the capital stock and the debenture bonds of various banks and trust companies in Iowa and Missouri, and was received by the defendant soon after his appointment as guardian and immediately after the making of said decree, from the administrator *de bonis non* with the will annexed of said estate.

It is alleged in the bill, and urged in argument, that it was the duty of the defendant to refuse to receive the stock and bonds from the administrator, and to demand cash in-

stead. But it is impossible, on the allegations of the bill, to charge him with a breach of duty in this respect.

It is further objected that the allegations of fraud are not sufficient. We take no note of the allegations in paragraph 17 of the bill, for they are bad for generality. Those in paragraph 19 are, that the defendant, contriving and intending to deceive and defraud the orator of his rights in the premises, and with intent to prevent him from calling the defendant to account for his breach of trust as guardian, told the orator that he had used all due care and diligence in and about the orator's estate; that as the investments had been made before the securities came into his hands, he was under no duty to change them, and that the losses occasioned by their depreciation were without his fault, and that he had fully performed all the duties of his trust. The bill then goes on to allege that the orator fully believed and relied upon the truth of said representations, and believed that the defendant had disclosed to him all the facts necessary to inform him of the full extent of his rights and remedies in the premises, and believed that the defendant had committed no breach of trust for which he could be called to account, and so did not object to receiving his property in the form in which it was offered to him, and approved the defendant's account.

It is contended that these declarations of the defendant were but expressions of his conclusions of law, and that such general statements of opinion are not fraudulent, especially as it is not alleged that the defendant did not honestly believe them to be true. But the allegation is that they were made with intent to deceive the orator, and that they did in fact deceive him, in respect of his rights; and this the demurrer admits. It is also alleged, in effect, in the last amendment, that said statements were not true. But if these statements

are to be treated as conclusions of law, as contended, yet such representations cannot be made with impunity in respect of matters pertaining to a fiduciary relation existing between the parties concerning which, as here, the declarant had superior knowledge and means of knowledge, for he knew what he had done or omitted to do, while the orator knew nothing about it. I Big. Fraud, 1st ed., pp. 264, 488. The bill further alleges that when the defendant presented his final account to the orator for his approval, he knew, and had known for several months, that the securities in question were of little or no value, and that loss thereon must be sustained by him or the orator, and that to avoid loss to himself, he took advantage of his relation to the orator and of his influence over him, and thereby obtained said approval from him, which he would not have given but for the withholding of said information by the defendant. These allegations are sufficient to induce the court to inquire into the matter on its merits, for the law is extremely watchful to prevent a guardian from taking any advantage immediately on his ward's coming of age and at the time of settling his account and delivering up his trust, because undue advantage may be taken. It is not necessary that actual fraud should have been practiced; it is enough that there was an opportunity to practice it. *Hylton* v. *Hylton,* 2 Ves. 549; *Wade* v. *Pulsifer,* 54 Vt. 45.

It is objected that the bill is without equity, for although it alleges that the defendant might, by the exercise of proper diligence, have sold the securities for from ten to thirty per cent. above their par value, yet it also alleges that they had no value nor quotation in the large stock markets of the United States, and that their salability in and around Montpelier, where the defendant lived, was due to the fact that certain unscrupulous and dishonest persons interested in the cor-

porations issuing said securities had created a "boom," or an abnormal demand therefor, fraudulently, and with intent to deceive those who invested their property therein; that said abnormal demand had no sound business foundation, but rested in the well-known tendency of people to invest in something that promises large returns, and that at the time the defendant received said securities, said corporations were managed in a grossly extravagant, and in some cases in a fraudulent and dishonest, manner by the officers thereof; that it was widely believed at the places where said corporations were located that they were conducted for the purpose of defrauding Eastern investors who had been induced to put money into their securities; that the large dividends paid by them were paid out of capital and not out of earnings; and that said corporations had knowingly made loans on real estate grossly in excess of its value; that the affairs of said corporations, from the time of the appointment of the defendant until their final bankruptcy, were conducted so extravagantly, fraudulently, and dishonestly that had the defendant gone to the places where said corporations were located and made personal investigation of their business standing, he would have been satisfied as a man of sound discretion, ordinary business prudence and intelligence, that the orator's funds then invested in said securities were not safely and profitably invested, and that it was his duty to convert said securities into cash forthwith, and to reinvest the same safely and profitably according to law. The bill further alleges that the situation afforded the defendant no means of compelling repayment of the capital sums of the orator's property invested in said securities, had it at any time appeared to him that such sums were unsafely invested.

This is a pretty thorough impeachment of the value of these securities, and shows that they were really worth little

or nothing when they came into the defendant's hands, and the bill alleges that they were worth nothing when he turned them over to the orator. It also alleges that they could not have been enforced against the companies, and had no value on 'Change. The only complaint is that the defendant should have taken the tide at the flood, and sold when the "boom" was on in and around Montpelier. But the defendant says, that charging him with all the bill alleges he would have found out about the securities had he done his duty, he could not have sold them without disclosing to the purchaser what he knew, without committing an actionable fraud himself, which he was not bound to do, and that if he disclosed what he knew, he could not have sold at all. But suppose that is so, still he could have offered them for sale at the purchaser's risk, under the rule of *caveat emptor,* and we cannot say as matter of law that he could not have sold in that way. The inference that he could have, from all that is alleged, is neither too remote, indefinite, nor contingent to form an element of recovery. Indeed the demurrer must be taken as admitting that he could have sold in some legitimate way, for that is the fair import of the allegation, which must be construed to mean such a sale, supposing the pleader to have intended his pleading to be consistent with itself. *Royce* v. *Maloney,* 58 Vt. 437, 5 Atl. 395.

Whether he could have safely sold the stock without disclosing what he is to be charged with knowing about it, we do not decide. Some cases make a distinction between the sale of the capital stock of a going concern and the sale of commercial paper or other obligations for the payment of money, in respect of the duty of the seller to disclose his knowledge of the corporation's or the maker's insolvency. *Rothmiller* v. *Stein,* 143 N. Y. 581.

If the orator was dissatisfied with the defendant's account as settled and allowed by the probate court, the statute gave him four years to apply to said court for a re-examination and correction of it, as he resided out of the State at the termination of the trust. But he made no such application, and alleges that the defendant did not tell him that he could, and that he did not discover his rights till shortly before he brought his bill, which was eight years after he came of age and after the making of said decree; but why he did not sooner discover them is not alleged, unless, possibly, by vague and uncertain inference. The defendant contends that the orator ought to have discovered his rights sooner, and that, as he sets forth no reason why he did not, he is barred by the lapse of the statutory time for applying for a re-examination of the account, and by the lapse of the statutory period limiting actions at law for fraud. But this defense cannot be availed of by demurrer, because, if for no other reason, time did not necessarily begin to run against the orator when the confidential relation ended, but only when the influence of that relation ceased to operate upon him so he could act independently of it, and the bill does not show when that was, unless it shows that it was shortly before the suit was brought, but not how shortly before. *Wade* v. *Pulsifer,* 54 Vt. 45, 65; Benjamin's Principles of Contracts, 84; 18 Eng. Ruling Cases, 357.

*Demurrer overruled, bill adjudged sufficient, and cause remanded.*