## WILLIAM L. SCOVILLE *v.* JAMES W. BROCK.

May Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, POWERS, and MILES, JJ.

Opinion filed January 7, 1907.

*Guardian and Ward—Guardian's Final Account—Allowance by Probate Court with Ward's Consent and Approval after full Age—Bill to Vacate—Guardian's Failure to Instruct Ward as to his Legal Rights—Effect—Laches of Ward— Statute of Limitation—V. S.—2810—Influence of Guardian After Expiration of Guardianship—Equity Pleading—Effect of Sustaining Demurrer to Whole Bill.*

Where a demurrer to the whole of a bill in equity is sustained, the orator must make a new case; but he may do so by amending the rejected bill, which will then be regarded as a new bill, and defendant's answer or other reply to the original bill treated as dropped from the pleadings, leaving him to plead anew.

Where after a demurrer to the whole of a bill in equity is sustained, defendant makes a new case by amending the rejected bill, any concessions contained in the answer to the original bill are not available to the orator as a part of the pleadings; but any material admission contained in that answer is provable in favor of the orator, like any other documentary admission *dehors* the record.

Where by fraud or misconduct one has gained an unfair advantage in proceedings at law, whereby the court of law will be made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of that advantage by either enforcing a judgment so inequitably obtained, or by relying upon it in defence.

In a suit in equity against the orator's former guardian to compel defendant to account for the trust estate, although the probate court, through defendant's alleged fraud, has allowed his final account as such guardian, it is not necessary, in order to grant affirmative relief, to vacate the decree of the probate court, for

29

defendant may be held accountable as trustee notwithstanding that decree.

In a suit in equity to compel the orator's former guardian to account for the trust estate, notwithstanding the allowance by the probate court of defendant's final account as such guardian, the master's findings examined, and *held* that the orator's claim that said allowance was made because of his approval of the final account, obtained by defendant's fraudulent concealments and representation, is not sustained.

The influence of a guardian over his ward is presumed to continue for a time after the guardianship has ceased.

In a suit in equity to compel the orator's former guardian to account for the trust estate, notwithstanding the allowance by the probate court of defendant's final account as such guardian, it appeared that, shortly after the orator became of age, defendant made a final settlement of his guardianship account in probate court, in the orator's presence and with his approval; that said final account was then allowed by the probate court, and all the property shown by the settlement to be due the orator was then turned over to and accepted by him. *Held*, that the finding that the defendant "in no manner sought to deceive his ward in any particular, but on the contrary gave him all the information he possessed in reference to the guardianship matters," is not sufficient to make the settlement binding upon the orator; that besides this, it was the duty of defendant to see that the orator was fully advised as to his legal rights in the premises. *Wade* v. *Pulsifer*, 54 Vt. 45, explained and followed.

In such case, the guardian cannot relieve himself of the duty of seeing that his ward is fully instructed as to his legal rights in the premises, by assuming that the probate court will give the requisite instruction.

The Statute of Limitations would not begin to run, as against the orator, till the influence of the confidential relation had ceased.

The Statute of Limitations would not begin to run, as against the orator, till something occurred to raise a doubt as to defendant's conduct; and, as the master finds that the orator did not know the law as to his rights till nearly eight years after he became of age, during which time he continued to have perfect confidence in the integrity of defendant and a belief that he had acted honestly, properly, and legally as his guardian, that defence cannot avail defendant.

V. S. 2810, relating to a further hearing on a guardian's final account within a fixed period after the allowance thereof by the probate court, and providing that the allowance then made should be conclusive, was not intended to create an exclusive remedy, or to operate as a limitation upon all remedy, if the time fixed was suffered to expire without having taken advantage of the provisions of that statute.

Since defendant's failure to instruct the orator as to his legal rights occasioned no loss to him unless defendant failed to exercise the requisite diligence in respect of certain investments in his hands, a question of fact concerning which the master has made no finding; and although, because the burden of proof as to that question is on defendant, it might be decided against him on the report, still as by that course injustice would be done defendant if he was not in fact negligent, the report is recommitted that the master may pass upon that question.

Where the probate court decrees to a minor certain stocks and bonds of nonresident corporations, as his interest in his father's estate, his guardian is not chargeable with negligence because he received such securities instead of demanding cash.

APPEAL IN CHANCERY. Heard on the pleadings, master's report and exceptions thereto, at the March Term, 1906, Washington County, *Rowell,* Chancellor. Decree, strictly *pro forma,* dismissing the bill with costs to the defendant. The orator appealed. This case has been twice before in the Supreme Court. See 75 Vt. 243, and 76 Vt. 385.

The orator became of age July 27, 1894. The defendant's final account as guardian of the orator was settled and allowed by the probate court, in the orator's presence and with his approval, on July 30, 1894. The defendant was duly appointed guardian of the orator by the probate court within and for the District of Washington in this State, on September 1, 1890, accepted the trust, and continued to act as such guardian till he settled his final account. On September 19, 1890, said probate court decreed to the defendant as guardian

of the orator, certain stocks and bonds of non-resident corporations, of the face value of $7,032, as the orator's interest in his father's estate.    The defendant received these stocks and bonds as such guardian, and held them till he turned them over to the orator at said final settlement.    In the meantime certain of said corporations had failed, thereby rendering some of these securities worthless.    It was in respect of the defendant's management of these securities that the orator complained.    Among other things, the master reported: "William L. Scoville lived at Montpelier, Vermont, until he was 17 years old.    He was at New Haven, Connecticut, for nearly five years and graduated from Yale College in 1896.    He lived the next year in Rutland, Vermont, having decided to study law before going to Rutland.    He went from there in the fall of 1897 to Cambridge, Massachusetts, where he has ever since resided.    While in Rutland he was in the office of James A. Merrill, who was the judge of the city court, acting as clerk in the office, doing the detail work and correspondence and the general small matters of the office.    When he left Rutland and went to Cambridge, Massachusetts, in the fall of 1897, he entered the Boston University Law School.    He went as a soldier in the Spanish War and in the fall of 1898 he entered Harvard Law School.    He was in that school until the fall of 1900, when he was admitted to the practice of law and commenced the practice of his profession in which he has ever since been engaged in Boston, Mass.    In April or May, 1902, William L. Scoville brought some papers from his house to his office to sort out and file away in such a way that should occasion arise he could readily have access to them.    When he came to sort and file away the papers he found among the papers thus brought to his office one of the certificates of stock that

he had received from his guardian in the settlement made in the Probate Court July 30, 1894. He was at that time very short of money and he thought what hard luck it was to lose all the money these papers represented and then for the first time the thought came into his mind that possibly something could be done about it, and he proceeded at once to look into the matter. He had not up to that time known or suspected that defendant was liable and had not known what the law was or had been as to his rights. He made an investigation in the State law library in Massachusetts and the next day or the following day he wrote Mr. Deavitt, of Montpelier, Vermont, laying the matter before him and asked him to take any steps that might be necessary. He wrote Mr. Deavitt May 12, 1902. Up to that time William L. Scoville continued to have perfect confidence in the integrity and ability of the said James W. Brock and belief that he had properly and honestly acted as his guardian and managed the securities in the hands of the guardian in a legal and proper manner."

*Elbridge R. Anderson* and *Edward H. Deavitt* for the orator.

The defendant was negligent in keeping all of the trust estate invested in the bonds and stocks of foreign corporations. *McCloskey* v. *Gleason*, 56 Vt. 264; *King* v. *Talbot*, 40 N. Y. 76; *Gray* v. *Fox*, 1 N. J. Eq. 259; Dickinson, Apt., 152 Mass. 184; *Harvard College* v. *Amory*, 9 Pick. 461.

*Melville E. Smilie* for the defendant.

MUNSON, J. The master finds certain facts from the evidence, and leaves it for the Court to say what concessions contained in the answers are available to the orator. The

original bill was held insufficient on demurrer, (75 Vt. 243, 54 Atl. 177), and two several amendments thereto were afterwards filed. The defendant then answered the bill and the amendments, "waiving the answer to the original bill." The orator insists that the first answer could not be waived without the express leave of the court, citing *Morrill* v. *Morrill*, 53 Vt. 74. That, however, was an amendment interposing a further defence to the same bill, made on leave in the course of the hearing, and done by interlineation; and the decision was merely a condemnation of that method of making an amendment. In this case, a decree of the court of chancery sustaining the demurrer and dismissing the bill was affirmed in the Supreme Court, and the leave of the court was given when the case came back on remand.

Strictly speaking, where a demurrer to the whole bill is allowed the bill is out of court, and no subsequent proceeding can be taken in the cause. This is the rule as given in 3 Dan. Ch. Pr. 1st Am. Ed. 668. The author remarked, however, that there were cases where the court had afterwards permitted an amendment of the bill to be made, and that even after a bill had been dismissed by order it had been considered allowable for the court to set the case on foot again. But the authority of these cases was questioned, and the author concluded that it might be considered a positive rule, liable to scarcely any exception, that after a demurrer has been allowed the case is entirely out of court. It is said, however, in *Mercantile Nat. Bank* v. *Carpenter*, 101 U. S. 567, 25 Law. Ed. 815, that the rigor of this principle has since been relaxed; and Mr. Beach in his Modern Equity Practice, § 279, speaks of the rule as one that formerly prevailed. But although the practice discountenanced by Daniel has since obtained, and is now gen-

erally established by rules of court, logically and technically
the situation is the same.    The orator must make out a new
case, but may do this by amending the rejected bill.    This be-
ing so, the defendant must be entitled to answer anew, the
same as if replying to a bill new in form as well as new in fact.

The decisions point unmistakably to this conclusion. Af-
ter an amendment, the defendant may demur to the whole bill,
though a demurrer to the original bill has been overruled.
*Bancroft* v. *Wardour,* 2 Brown's C. C. [*66]. He may demur,
though the original bill has been answered.    *Cresy* v. *Beavan,*
13 Sim. [*354] ; *Dillon* v. *Davis,* 3 Tenn. Ch. 386 (395.)    He
may plead, although a full answer was put in to all that was
contained in the original bill.    *Ritchie* v. *Aylwin,* 15 Ves. 79.
He must answer all the interrogatories of the amended bill,
though some of them are repetitions of those in the original
bill and have been answered.    *Mazareds* v. *Maitland,* 3 Madd.
66.    It is apparent from these holdings that the amended bill
is treated as a new bill, and the defendant's replies to the
original bill, whatever they are, as dropped from the pleadings,
leaving the defendant to plead anew.    Otherwise he could not
demur again to the whole bill, for coextensive demurrers are
not allowed.    Nor could he plead matters covered by his for-
mer answer, for the answer would overrule his plea.    Nor
would he be bound to answer interrogatories in the amended
bill that he had already answered.

The right of the defendant to answer anew is broadly
asserted by authorities which fully recognize the modern doc-
trine of amendment after demurrer sustained.    It is said in
1 Beach Mod. Eq. Pr. §398, citing *Bowen* v. *Idley,* 6 Paige 46,
and *Bosanquet* v. *Marsham,* 4 Sim. 573, that where a com-
plainant amends his bill after answer it is a matter of right

for the defendant to put in a new or further answer to the amended bill, except where the amendment is one that cannot vary the right of the defendant; that if the substance of the bill is amended in any manner, however trifling, the defendant may put in another answer and make an entirely new defence.

So the answer to the original bill and the concessions contained in it are not now available to the orator. But any material admission which the answer contains is provable, like any other documentary admission not embraced in the record of the proceeding.

The substance of the orator's complaint is that the defendant was negligent in the management of the funds which he held as the orator's guardian, and thereby incurred losses for which he was legally chargeable; and that he induced the orator by fraudulent concealments and representations to approve a final account which relieved him from liability, and that the account was allowed by the probate court because of such approval; and that the decree in that behalf passed without contest and remained unappealed from because of the orator's ignorance of his rights in matters regarding which it was the defendant's duty to give him information. The original bill disclosed the existence of a decree, but contained no allegations regarding the proceedings on which it was based, and this was held insufficient on demurrer because the allegations that the orator's approval of the account was obtained by fraud were not followed by averments sufficient to carry the effect of the alleged fraud into the decree. 75 Vt. 243, 54 Atl. 177. The bill as amended and held sufficient on demurrer alleges, among other additional matters, that the decree was made solely by reason of the approval, and without the

consideration of any other fact or circumstance. 76 Vt. 385, 57 Atl. 967.

The findings bearing upon the approval are adverse to the orator. The guardian did not suggest the taking of the approval, nor know of it at the time, nor hear of it until informed by these proceedings. The judge of probate took the approval of his own motion, in accordance with his practice in such cases. He considered and passed upon the accountability of the guardian in the matters complained of, independently of the approval. The decree was made upon notice and appearance, after an opportunity to be heard, upon a consideration of matters known to the judge, and as a judicial disposition of the case. The master says he is unable to find that the approval had any influence whatever upon the court in reaching its conclusion. So the claim made by the amended bill in the respect above stated is not sustained.

But it appears from the findings that there was no actual inquiry or hearing, and the orator insists that his failure to contest the account, and his failure to appeal from the decree, were due to the defendant's fraud, and that equity will not permit the defendant to avail himself of the decree for his protection. It is well settled that when one has gained an unfair advantage in proceedings at law by fraud or misconduct, whereby the court of law will be made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of the advantage thus unfairly obtained. *Delaney* v. *Brown*, 72 Vt. 344, 47 Atl. 1067. The usual application of this rule is in cases where the party in fault is seeking to enforce a judgment, but the reason of it requires its application where the judgment is relied upon in defence. It is not necessary to inquire as to the circumstances in which equity will

act directly upon a probate decree. Inability to vacate a decree will not prevent affirmative relief, for a trustee may be held accountable, notwithstanding the decree, for what was improperly retained. *Sohler* v. *Sohler,* 135 Cal. 323, 87 Am. St. 98; *Aldrich* v. *Barton,* 138 Cal 220, 94 Am. St. 43, and note. It remains to inquire whether the findings entitle the orator to relief of this nature.

It is found that the defendant "in no manner sought to deceive his ward in any particular, but on the contrary gave him all the information he possessed in reference to the guardianship matters." It is found more specifically that at the time of the settlement in the probate court the guardian produced the securities and told his ward all that he knew about them; that he told him they were the identical securities turned over to him by the estate, that they had ceased paying interest and dividends at certain dates, that nobody knew what the value of them was, and that some of them might turn out to be good and some might not. Neither party had counsel present and nothing was said to the ward about his having professional or other disinterested advice.

A few days before the settlement the guardian showed a rough draft of his account to the probate judge, and said that considering the way the securities had come into his hands, and the suddenness with which some of them had depreciated in value or become worthless, he ought not to be held responsible. To this the judge made no reply. The judge had some personal knowledge of the character of the securities and considered in view of the knowledge he had that the guardian ought not to be held responsible for the depreciation, and therefore approved the account. Nothing was said at the hearing by anyone about the question of the guardian's liability

for the losses.    It appears from the guardian's earlier remark
to the judge that he understood that the situation was such
that a question as to his liability might be raised.    Was it his
duty in the circumstances to say this to his ward, or advise him
of his privileges regarding counsel?

The finding that the guardian in no way sought to deceive
his ward does not dispose of the case.    The question is not
merely whether there was actual fraud or intentional wrong-
doing, but whether there was a failure to comply with the
rules which the law has established for the protection of
beneficiaries.    *Walworth's Est.* v. *Bartholomew's Est.,* 76 Vt.
1, (11) 56 Atl. 101.    Nor is the case disposed of by the find-
ing that the guardian gave his ward all the information he
had regarding the securities.    The ward was entitled to be in-
formed not only of the facts but of his rights with reference
to the facts.    Perry on Trusts, §851; *Hall* v. *Turner's Est.,*
78 Vt. 62 (68) ; *Burrows* v. *Walls,* 5 De. G. M. & G. 233.    It
is clear that the statement in some of our cases that the guard-
ian must advise his ward of all the facts, was not intended to
limit this rule; for it is the holding of all the cases that the
guardian cannot deal with the ward in his own interest with-
out first placing him upon an equal footing with himself, and
this requires something more than a knowledge of the facts.
This subject is fully treated in *Wade* v. *Pulsifer,* 54 Vt. 45.

It is claimed, however, that *Wade* v. *Pulsifer* is not an
authority upon the facts presented here.    It is said that the
transaction in that case was during the ward's minority, while
this transaction was after the ward became of age.    But this
cannot serve to distinguish the cases; for the influence of the
fiduciary relation is presumed to continue for a time after the
guardianship has ceased. 1 Story Eq. Jur. §217; *Scoville* v.

*Brock,* 76 Vt. 385; *Gillett* v. *Willey,* 126 Ill. 310, 9 Am. St. 587. It is also said that one transaction was a gift and the other a settlement, but this affords no basis for distinguishing the cases. No satisfactory ground of distinction can be found between the making of a gift and the waiver of a right to enforce a liability. The distinction between gifts and releases made by Chancellor Kent in *Kirby* v. *Taylor,* 6 Johns. Ch. 242, is discredited by a long line of decisions to the contrary. Note 89 Am. St. 303.

But the matter mainly relied upon to distinguish the two cases is the fact that the gifts in the *Pulsifer* case were made out of court, and that there was nothing in the guardian's account, and nothing said at the hearing, to bring them to the attention of the court. It is urged that the duty of information, as far as it relates to the legal rights of the ward, can have no application to a settlement made in court. This claim, as far as it is based on the nature and effect of the proceeding, is sufficiently covered by the previous discussion. It certainly cannot be sustained on the theory that it is the duty of the probate judge to give the ward whatever legal information his interests may require. If a probate judge has any duty in this respect it is one that results from the special circumstances of the particular case, and is nothing that a guardian can rely upon to relieve him from this requirement. The duty in question is one that grows out of the relation between guardian and ward; and it is the guardian's duty to see that his ward has this information before making a final settlement.

But the defendant contends that any right the orator may have had is barred by the expiration of the statutory period of limitation. The statute would not begin to run until the in-

fluence of the confidential relation had ceased. *Scoville* v. *Brock,* 76 Vt. 385, 57 Atl. 967. The defendant refers to the statement that the orator and the defendant met but once after the settlement and had no other communication by letter or otherwise, and treats this as a finding that the influence of the confidential relation ceased immediately after the termination of the relation. But the master finds that up to the spring of 1902 the orator had not known the law as to his rights, and had not suspected that the defendant was liable for the losses, and had continued to have perfect confidence in the integrity of the defendant, and a belief that he had acted honestly, properly and legally as his guardian. Although there were no further personal relations to keep up the guardian's direct influence upon the ward, that influence continued to exist in the confidence and beliefs generated by the previous relation and the manner of its termination; and the statute would not come into operation until something occurred to raise a doubt as to the guardian's conduct.

V. S. 2810, also referred to by the defendant, is not a bar to the relief sought. This section relates to a further hearing in the probate court and to the finality of an allowance then made. It was not intended to create an exclusive remedy, and so operate as a limitation upon all remedy if the time fixed was suffered to expire without advantage being taken of the provision.

But the omission of the duty we have pointed out does not make the defendant liable if it did not occasion loss to the orator, and it occasioned no loss to the orator if the defendant exercised the requisite care and diligence in respect to the investments in his hands, for it is only upon the ground that this was wanting that the defendant can be made liable. But

the question whether the defendant exercised proper care and diligence in the circumstances of the case is a question of fact, and the master has not passed upon it. It is doubtless true that the burden of proof as to this is on the defendant, so that the question could be decided against him on the report as it stands; but we are not inclined to take this course, for injustice would then be done the defendant if he was not in fact negligent. It is therefore deemed proper to have the report recommitted that the master may pass on this question.

The defendant is not chargeable with negligence in receiving the securities instead of demanding cash. It was so held in *Scoville* v. *Brock,* 76 Vt. 385, 57 Atl. 967, and the facts upon this point are now the same as were admitted by the demurrer. The inquiry will be whether the defendant in continuing to hold the securities, acted with fidelity, and with that measure of care and diligence that a prudent man would have exercised in the same circumstances. And if it is found that the defendant, in the faithful and prudent administration of his trust, ought to have disposed of the securities at any time, the value of the securities is to be determined with reference to that time.

*Pro forma decree reversed, and cause remanded that the report may be recommitted for the purpose stated.*